VIOLA OHLEMEIER, Petitioner-Appellant, v. COMMUNITY CONSOLI-
DATED SCHOOL DISTRICT No. 90, Respondent-Appellee.

Fifth District   No. 5—85—0474

Opinion filed January 6, 1987.

Bob L. Perica, of East Alton, for appellant.

Joel M. Drury, of O'Fallon, for appellee.

JUSTICE JONES delivered the opinion of the court:

Plaintiff, Viola Ohlemeier, an instructional aide for the defendant school district, brought this action for breach of contract after the defendant notified the plaintiff, on August 23, 1984, that her hours of employment would be reduced one hour per day for the 1984-85 school year. The defendant had previously informed the plaintiff, by letter of May 16, 1984, that she would be reemployed by the school district to work a six-hour day in the upcoming school year. The trial court ruled for the defendant school district, finding that the "employment contract" between the plaintiff and the school district was subject to the provisions of the district's policy manual, which stated that such employment could be terminated by either party upon two weeks' notice and that this ability to terminate the employment relationship included the ability to modify the plaintiff's contract in the way indicated. The plaintiff has appealed from this judgment, contending that the trial court erred in considering the plaintiff's contract to be an "at will" contract and in allowing parol evidence to be introduced to interpret the terms of an unambiguous contract. The plaintiff contends additionally that the trial court erroneously considered portions of the district's policy manual that had not been specifically bargained for and had not been made a part of the letter of May 16, 1984, stating the terms of the plaintiff's employment. We affirm.

The plaintiff has been employed by the defendant school district as an instructional aide for the past nine years. At the end of each school year the plaintiff has received a letter either rehiring her for the next school year or giving her reasonable assurance that she would be rehired for the upcoming school year.

On or about May 16, 1984, the plaintiff received a letter informing her that the board of the defendant school district had voted to employ her for the 1984-85 school year in the capacity of instructional aide. The letter continued:

"Your duties and responsibilities will be those set out in the Job Description made part of the District's Manual of Policies and Procedures. The term of your employment is for 9 months, beginning 8/27/84 and ending on the last full day of pupil at-

tendance for the school year. Your work day will be from 9:00 a.m. to 3:00 p.m. at the LaVerna Evans School. Paid holidays will be granted in accordance with District #90 policies."

The letter additionally stated that the plaintiff's salary for the 1984-85 school year had not been determined by the board at that time and that the plaintiff would be notified as soon as salaries were adopted by the board.

Subsequently, by letter dated August 23, 1984, the board advised the plaintiff that because of budgetary restrictions that had not been anticipated at the time the plaintiff was reemployed for the upcoming school year, her normal work day would be reduced from six hours to five hours per day. The letter stated further that there had been no changes in the plaintiff's hourly rate of pay and fringe benefits at that time.

The plaintiff reported for work on August 27, 1984, the first day of full attendance by the pupils, and began working a five-hour day as stated in the letter of August 23, 1984. Later, in October, the board changed its policy regarding paid holidays. On January 14, 1985, the plaintiff filed suit against the school district seeking damages in the amount of $2,500 for the number of hours lost because of the board's reduction of the plaintiff's workday and its change of policy regarding paid holidays.

At trial on the plaintiff's complaint for breach of contract, the plaintiff testified that when she had received the district's letter of May 16, 1984, she had relied upon the board's representation that she would be working six hours per day and had figured both her salary and her retirement and Social Security benefits on this basis. She had gone to work the first day assuming that she had a job with the school district as stated in the board's letter. Sometime in October the board had voted to change its policy, adopted two years earlier, of providing extra paid holidays for non-school days occurring at Easter, Thanksgiving, and Christmas. Prior to this change, the plaintiff had assumed that she would be paid for these days in addition to the eight paid holidays that were provided as part of her job description.

On cross-examination the plaintiff was questioned regarding the board's policy manual, which provided, in pertinent part:

"Letters of employment shall be written [for non-certified personnel] for the period decided by the Board of Education for the particular position *but may be terminated by either party upon two weeks notice.*" (Emphasis added.)

The plaintiff testified that she was "not really" familiar with the board's policy manual although it had been available to her in the

teacher's lounge and she had reviewed the section on noncertified personnel in researching her complaint. She had received the board's letter modifying her workday approximately three days before school started and, while she had begun working a five-hour day when school started, the board had paid her for a six-hour workday for the first two weeks of the school year.

The plaintiff acknowledged that she had understood that she had the right to terminate her employment with the school district upon two weeks' notice. In her nine years of experience she had known of noncertified employees who had tendered their resignations during the school year. She stated that if the board had reduced her salary she would have been obliged to come to work until she could have tendered her "two weeks' resignation." However, she had returned to work after learning that her hours had been reduced and had continued to work through the time of trial in April 1985. The plaintiff testified further that she had continued to work after the board's policy change regarding paid holidays although she "could have [terminated her employment] with two weeks' notice according to the way it's written [sic]."

Betty Klingelhoefer, a noncertified employee with the defendant school district, testified that it was her understanding that such employees could resign upon giving two weeks' notice. An employee had recently left the employment of the district after submitting her two weeks' notice. Ms. Klingelhoefer stated that she was aware of at least one noncertified employee who had had her hours shortened by the board prior to that year.

Dr. Remo Castrale, superintendent of the defendant school district, testified that the policy manual in question had been in effect for at least six years, since he had been employed by the district, and that the provision regarding termination upon two weeks' notice had been unchanged during that time. In the 1984-85 school year there had been at least three noncertified employees who had invoked that provision in resigning upon two weeks' notice.

Dr. Castrale stated that at the time the letters of employment had been sent out in May 1984 pursuant to the provision in question, it had not been possible to determine what funds would be available to the district. When the final budget figures had become available in August of that year, the board had directed him to determine how services could be curtailed to reduce expenditures so as to "approximate a balanced budget." The decision was made to shorten the hours of noncertified employees rather than to eliminate positions so as to ensure these employees full-time employment.

Dr. Castrale stated that it was the board policy to mail letters of employment for the upcoming school year to noncertified employees in the spring before the budget is "finalized." This is done "to indicate to the employees that they've been employed [and] to give them some idea of what their work hours will be." The letters are sent before the board knows what money will be available "[b]ecause we feel as though we have an option to reduce hours, to dismiss people under the two-week provision." Dr. Castrale stated that the board intends for the employees receiving the letters to believe that they have a job for the upcoming school year, and "they usually do." The board had been advised by its insurance carrier that giving these employees reasonable assurance of employment for the upcoming school year would preclude the employees from obtaining unemployment benefits during the summer months.

Dr. Castrale testified finally that pay raises had been given to school personnel in the range of 3% to 6% for the 1984-85 school year. These raises had been given to all employees, including the noncertified employees whose hours had been reduced.

After hearing the evidence the trial court ruled for the defendant school district and against the plaintiff. In its written memorandum of judgment the court made the following findings:

"1. The letter of employment issued by the defendant school district to the plaintiff was subject to the terms and provisions of the District's Manual of Policies and Procedures.

2. The employment contract between the parties was subject to termination by either party upon giving two weeks notice.

3. The ability to terminate the employment contract includes the ability to modify the employment contract upon giving the required notice.

4. The defendant has complied with all applicable notice requirements in amending the plaintiff's employment contract."

On appeal from this judgment the plaintiff contends initially that the trial court erred in considering the plaintiff's letter of May 16, 1984, as an "at will" contract that could be modified by the defendant at will. The plaintiff asserts that the so-called contract, which stated a definite beginning and ending date, was for a specific duration and thus could not be characterized as an "at will" contract. (See *Sargent v. Illinois Institute of Technology* (1979), 78 Ill. App. 3d 117, 397 N.E.2d 443; *Criscione v. Sears, Roebuck & Co.* (1978), 66 Ill. App. 3d 664, 384 N.E.2d 91; *Long v. Arthur Rubloff & Co.* (1975), 27 Ill. App. 3d 1013, 327 N.E.2d 346.) The defendant counters, however, that the two-week termination provision contained in the board's policy man-

ual was properly considered by the trial court as a part of the plaintiff's contract so as to make the plaintiff's contract terminable at the will of the parties and thus an "at will" contract that could be modified as a condition of its continuance (see *Swalley v. Addressograph Multigraph Corp.* (7th Cir. 1946), 158 F.2d 51, *cert. denied* (1947), 330 U.S. 845, 91 L. Ed. 1290, 67 S. Ct. 1086).

The issue of whether personnel policies and procedures developed and unilaterally adopted by an employer become a part of employment contracts with its employees has been the subject of recent development in the Illinois appellate court. Illinois case law on this issue begins with *Carter v. Kaskaskia Community Action Agency* (1974), 24 Ill. App. 3d 1056, 322 N.E.2d 574, in which the Fifth District Appellate Court found that an employer must abide by procedures set forth in its personnel policy manual where the manual contained provisions which created mutual obligations for the employer and its employees and the employee in question assented to the manual as a modification of his employment relation. Subsequently, in *Sargent v. Illinois Institute of Technology* (1979), 78 Ill. App. 3d 117, 397 N.E.2d 443, the First District Appellate Court gave a narrow reading to *Carter*, holding that a personnel manual given to the employee in question when he began his employment which contained no provisions imposing conditions on him beyond his required duties was not "bargained for" and so was unenforceable.

In the recent decision of *Kaiser v. Dixon* (1984), 127 Ill. App. 3d 251, 468 N.E.2d 822, however, the Second District Appellate Court rejected the narrow reading given *Carter* by *Sargent*, holding that a detailed policy manual adopted by the employer after the plaintiff was hired, which imposed mutual obligations on both employer and employees, was enforceable despite the fact that there was no evidence that the manual had been "bargained for" by the employees. The *Kaiser* court adopted the rationale of *Toussaint v. Blue Cross & Blue Shield* (1980), 408 Mich. 579, 292 N.W.2d 880, that it was immaterial that no preemployment negotiations had taken place or that the employees had no knowledge of the particulars of the employer's policy statements if these statements went beyond a mere expression of policies for the guidance or instruction of employees and imposed mutual obligations on both employee and employer. See also *Pelizza v. Reader's Digest Sales and Services Inc.* (N.D. Ill. 1985), 624 F. Supp. 806; *Pudil v. Smart Buy, Inc.* (N.D. Ill. 1985), 607 F. Supp. 440.

■ In a subsequent decision, *Duldulao v. St. Mary of Nazareth Hospital Center* (1985), 136 Ill. App. 3d 763, 483 N.E.2d 956, the First District Appellate Court departed from its position in *Sargent,*

agreeing with the *Kaiser* court that:

> "the better-reasoned approach is to find the employer to the terms in its policy manual when the manual imposes obligations on both the employer and employee, regardless of whether the manual was actually 'bargained-for.'" (136 Ill. App. 3d 763, 765, 483 N.E.2d 956, 958.)

In *Duldulao* the manual in question was apparently in effect prior to the time the plaintiff was hired. Thus, under *Duldulao*, a policy manual that imposed mutuality of obligation would be enforceable regardless of whether it was actually bargained for and regardless of whether it modified an existing employment relationship or was in effect at the time the plaintiff was hired. See *Pelizza v. Reader's Digest Sales and Services Inc.* (N.D. Ill. 1985), 624 F. Supp. 806.

■ Applying this rule in the instant case, the plaintiff's contract could be said to be subject to the school district's policy manual and the termination provision contained in it because of the mutual obligations imposed upon both employee and employer by its terms. While the plaintiff asserts that the policy manual was never discussed or bargained for with the plaintiff or other school employees so as to become part of the district's contract with them, this was not required under the rule of *Kaiser* and *Duldulao* so long as the policy manual itself contained obligations binding both employer and employee. Moreover, while it was unclear from the testimony whether the district's policy manual became effective before or after the plaintiff began working for the district, this was immaterial to the question of whether the policy manual was to be considered a part of the plaintiff's employment contract under *Duldulao*. The policy manual here was sufficient to fulfill the requirement of mutuality of obligation set forth in *Kaiser* and *Duldulao*, and we accordingly find that the trial court properly considered the termination provision to be part of the plaintiff's employment contract.

■ Because the plaintiff's employment contract was subject to the two-week termination provision of the defendant's policy manual, it constituted an "at will" contract that could be modified at will despite the specific term stated in the plaintiff's letter of May 16, 1984. (*Cf. Brekken v. Reader's Digest Special Products, Inc.* (7th Cir. 1965), 353 F.2d 505 (employment contract for a stated term which was terminable by either party upon notice constituted a contract terminable at will).) While the plaintiff's letter here, unlike the contract in *Brekken*, did not expressly state that it was subject to the termination provision in question, the applicability of the termination provision in the district's policy manual was established by the evidence at trial.

■ The plaintiff's further contention that the trial court erroneously admitted parol evidence to construe the letter of May 16, 1984, is without merit, as the letter on its face failed to constitute a complete contract so as to preclude the introduction of such testimony. The parol evidence rule applies if the parties intend that a writing alone is to constitute the agreement between them or if the instrument states that it alone is to constitute the agreement between them or if the instrument is complete. (*Johnson v. Figgie International, Inc.* (1985), 132 Ill. App. 3d 922, 477 N.E.2d 795; *Tondre v. Pontiac School District No. 105* (1975), 33 Ill. App. 3d 838, 342 N.E.2d 290.) While the letter of May 16, 1984, contained some of the terms of the plaintiff's employment, the question of the plaintiff's salary was left open pending notification by the board. The letter additionally referred to another document, the district's manual of policy and procedures, as delineating the plaintiff's duties and responsibilities in her job with the district. Thus, the letter cannot be said to constitute a complete agreement for purposes of the parol evidence rule, and the trial court correctly considered such evidence in ruling for the defendant school district.

Because, as we have found, the plaintiff's employment contract with the district was terminable at will, it could be modified by the school district as a condition of its continuance. (*Swalley v. Addressograph Multigraph Corp.* (7th Cir. 1946), 158 F.2d 51; *Garber v. Harris Trust & Savings Bank* (1982), 104 Ill. App. 3d 675, 432 N.E.2d 1309.) The trial court ruled correctly in denying the plaintiff's claim for breach of contract, and we accordingly affirm the judgment of the circuit court of St. Clair County.

Affirmed.

KASSERMAN and HARRISON, JJ., concur.