MARY DOYLE *et al.*, Plaintiffs-Appellants, v. HOLY CROSS HOSPITAL, Defendant-Appellee.

First District (3rd Division) No. 1—95—3243

Opinion filed March 26, 1997.—Rehearing denied July 24, 1997.

George C. Pontikes and Sheni Hajat, both of George C. Pontikes & Associates, of Chicago, for appellants.

Dorothy V. Ward, Norma W. Zeitler, and D. Scott Watson, all of Keck, Mahin & Cate, of Chicago, for appellee.

JUSTICE CAHILL delivered the opinion of the court:

Plaintiffs appeal a trial court dismissal of their complaint under section 2—619(9) of the Code of Civil Procedure. 735 ILCS 5/2—619(9) (West 1994). They allege defendant terminated their employment in violation of the terms of defendant's employee handbook. The trial court relied on the second district decision in *Condon v.*

*American Telephone & Telegraph Co.*, 210 Ill. App. 3d 701, 569 N.E.2d 518 (1991), which held that an employer could unilaterally modify an existing contract to claim a contract no longer exists. We reverse.

Plaintiffs are nurses and former employees of Holy Cross Hospital. Mary Doyle and Leni Serra were hired in 1960 and 1968, respectively. Susan Valderrama and Valerie Zorek were hired in 1972. In 1971 Doyle and Serra received employee handbooks, which set out certain policies of the hospital. These policies were in effect when the handbooks were given to Valderrama and Zorek in 1972. Plaintiffs' complaint relies upon policy number 7—G, titled "Economic Separation," which reads in part:

> "Holy Cross Hospital is committed to providing a working environment where employees feel secure in their job. We understand that job security is important to an employee and to that employee's family. There are instances, though, that for economic or other reasons it becomes apparent that the permanent elimination of departments, job classifications and/or jobs must be made, and there is no reasonable expectation that employees affected could be placed in other positions in the hospital or be recalled for work in one year or less. To ensure that the economic separation is handled in an objective, structured and consistent way, the following policies will be followed in determining which employees will be affected.
>
> 1. Job Classification
> 2. Length of Continuous Hospital Service
> 3. Ability and Fitness to Perform the Required Work
>
> * * *
>
> Because of the special needs of our patients, the following factors will be used in an economic separation affecting R.N.'s:
>
> 1. Nursing Areas of Expertise
> 2. Length of Service Within Each Area of Expertise
> 3. Ability and Fitness to Perform the Required Work
>
> * * *
>
> Employees affected by an economic separation will be placed on a priority rehire list and will be contacted by the Human Resources Department if a position becomes available for which the separated employees may be eligible through experience, training, education and/or other qualifications. Priority rehire consideration shall be for a period of one year."

In 1983 Holy Cross added policy 5—I. That policy, titled "Employment Relationship," reads:

> "The Personnel Policies and other various Hospital employee and applicant communications are subject to change from time to time

and are not intended to constitute nor do they constitute an implied or express contract or guarantee of employment for any period of time. The employment relationship between the Hospital and any employee may be terminated at any time by the Hospital or the employee with or without notice."

In November 1991 Holy Cross terminated the plaintiffs. Plaintiffs filed a complaint for wrongful discharge, alleging breach of contract and promissory estoppel. They allege in their complaint that Holy Cross violated policy 7—G because: "a) there was in fact no permanent elimination of any departments, job classifications or jobs; b) there were other positions available on November 1, 1991, which plaintiffs could fill, but Holy Cross failed and refused to employ them in these positions; c) other employees with less continuous hospital service were retained; and d) more than one year has passed since plaintiffs were terminated, and subsequent to November 1, 1991, Holy Cross has had positions for which they were eligible through experience, training, education and qualifications, but Holy Cross has failed and refused to offer them any such positions."

Holy Cross filed a motion to dismiss the complaint under section 2—619(9) of the Code of Civil Procedure. 735 ILCS 5/2—619(9) (West 1994). Holy Cross argued that plaintiffs were at-will employees and that economic-separation policy 7—G no longer constituted an enforceable contractual right because the hospital had amended its handbook.

The trial court followed the decision in *Condon v. American Telephone & Telegraph Co.*, 210 Ill. App. 3d 701, 569 N.E.2d 518 (1991), and granted defendant's motion to dismiss.

The plaintiff in *Condon* argued that his employer breached an employment contract when it demoted him without following the procedures set out in personnel and management training manuals. After the plaintiff was hired, the employer inserted disclaimers in the manuals. The plaintiff argued that the disclaimers were invalid because they were not contained in the original manuals he received when hired. The second district court rejected the plaintiff's argument and held "an employer may unilaterally alter existing policies to disclaim those policies in order to prevent contractual obligations from arising under *Duldulao*." *Condon*, 210 Ill. App. 3d at 705. The *Condon* court reasoned that, because the plaintiff continued to work after the disclaimers were inserted in the handbook, he was bound by them. Explicit in the court's holding is that the plaintiff's continued performance constituted consideration for the contract modification. The court reached this conclusion based upon a reading of *Duldulao* in which it found implicit support. The *Condon* court wrote:

"The implied contract which arises under the *Duldulao* doctrine is unilateral in nature. In setting out its test for contract formation, the *Duldulao* court states in part three of the test that the employee accepts the offer by working or *continuing to work*. [Citation.] The only way an employee could accept an offer by continuing to work is if the employee was already employed and the employer altered an existing policy. Implicit in this requirement is that the employer may unilaterally change its own policies." *London*, 210 Ill. App. 3d at 708.

■ We respectfully disagree with this analysis of *Duldulao*. In that case, our supreme court applied traditional requirements for contract formation to determine whether an employee handbook created an enforceable contract—offer, acceptance, and consideration. *Duldulao v. St. Mary of Nazareth Hospital Center*, 115 Ill. 2d 482, 505 N.E.2d 314 (1987). The court held "an employee handbook or other policy statement creates enforceable contractual rights if the traditional requirements for contract formation are present." *Duldulao*, 115 Ill. 2d at 490. Three requirements must be met for an employee handbook or policy statement to form a contract. First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by "*commencing or continuing to work after learning of the policy statement*." (Emphasis added.) *Duldulao*, 115 Ill. 2d at 490. The *Duldulao* court then held: "When these conditions are present, then the employee's continued work constitutes consideration for the promises contained in the statement, and under traditional principles a valid contract is formed." *Duldulao*, 115 Ill. 2d at 490.

The *Condon* court read the emphasized language above to implicitly include a subsequent disclaimer of the policy statement, followed by the employee remaining on the job. There was no reason for the supreme court in *Duldulao* to so infer or hold. The issue of a subsequent disclaimer was not an issue in the case.

■ We turn now to whether the language of the employee handbook in this case contains a promise that is sufficiently clear and definite to constitute a contractual offer. It is a question of law. *Harrell v. Montgomery Ward & Co.*, 189 Ill. App. 3d 516, 521, 545 N.E.2d 373 (1989).

We find that policy 7—G of the employee handbook set out above, as a matter of law, meets the test in *Duldulao* for contract formation. Policy 7—G can be understood to convey a clear offer by Holy

Cross to relinquish the right to terminate at will. The requirements for contract formation were met for plaintiffs Doyle and Serra in 1971 and plaintiffs Valderrama and Zorek in 1972. Under *Duldulao* their work constituted their acceptance and the consideration to form the contracts. The defendant does not dispute this.

The issue before us is whether the disclaimer, added in 1983, which stated that Holy Cross could terminate "any employee *** at any time," is a legally binding change that altered plaintiffs' employment status and returned them to the status of employees at will. Plaintiffs argue that defendant's unilateral modification of the contract is unenforceable because the requisite consideration is lacking. Defendant, citing *Condon*, argues that plaintiffs' continued work after the unilateral modification of the contract in 1983 constitutes the consideration to make the disclaimer binding.

When an employment agreement is terminable at will, it may be modified by the employer as a condition of its continuance. *Ohlemeier v. Community Consolidated School District No. 90*, 151 Ill. App. 3d 710, 717, 502 N.E.2d 1312 (1987). This principle is the foundation of the reasoning in *Duldulao* that an employee's continuation of work constitutes consideration for the employer's offer to modify the employment contract. But, in this case, plaintiffs' employment contracts were not terminable at will. When they were given their handbooks, the hospital gave up the right to terminate plaintiffs at will and promised to follow handbook policy in job termination. That promise became a contractual obligation as we read *Duldulao*.

The 1983 disclaimer, which stated that Holy Cross employees were once again terminable at will, was an attempt to modify an existing contract between Holy Cross and plaintiffs. Traditional contract principles allow parties to modify their contract if there is consideration to support the modification. *De Fontaine v. Passalino*, 222 Ill. App. 3d 1018, 584 N.E.2d 933 (1991). Consideration consists of some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other. *Russell v. Jim Russell Supply, Inc.*, 200 Ill. App. 3d 855, 558 N.E.2d 115 (1990). If parties to a contract agree to a modification, consideration is usually found to exist where the obligations of both parties are varied. A modification solely for the benefit of one of the parties is unenforceable. See *De Fontaine*, 222 Ill. App. 3d 1018, 584 N.E.2d 933.

We do not reach the conclusion of the court in *Condon*. The court never explains how it is possible, under traditional contract principles, for an employee to revert to at-will status through the unilateral act of the employer. We are not the first court to question

*Condon*'s reasoning. See *Robinson v. McKinley Community Services, Inc.*, 19 F.3d 359 (7th Cir. 1994). The court in *Robinson* stated:

"The *Condon* court relied on *Duldulao*. But *Duldulao* did not alter basic rules of contract modification. *Duldulao* merely held that if an employer embodies a clear and definite promise in its employee handbook, then an offer has been made. *Condon* also relied on *Bartinikas v. Clarklift of Chicago North, Inc.*, 508 F. Supp. 959 (N.D. Ill. 1981). However, *Bartinikas* recognized that in Illinois, 'an employer acting *ex parte*, without the consent of the employee, cannot modify the terms of the employment contract.' *Bartinikas*, 508 F. Supp. at 961." *Robinson*, 19 F.3d at 364.

We will not infer, as suggested in *Condon*, acceptance and consideration because the plaintiffs continued to work. Plaintiffs were not then employees at will. If, as Holy Cross argues, plaintiffs' continued work amounts to acceptance and consideration for the "loss" of their right under the economic-separation policy, then the only way plaintiffs could preserve and enforce their contractual rights would have been to quit working after Holy Cross unilaterally issued the disclaimer. This would make the promise by Holy Cross not to terminate, except under the terms of the economic-separation policy, illusory. The illusion (and the irony) is apparent: to preserve their right under the economic-separation policy the plaintiffs would be forced to quit.

We believe this analysis avoids an illogical result: by continuing to work, plaintiffs continued to perform their duties and assert their rights under the existing contract, which promised that Holy Cross would follow specific procedures for job termination. Plaintiffs received no benefit and Holy Cross suffered no detriment when Holy Cross modified the employee contract to attempt to make plaintiffs terminable at will. There was no bargained-for exchange to support plaintiffs' purported relinquishment of the protections they were entitled to under the existing contract. The modification by Holy Cross was solely for the benefit of Holy Cross and is unenforceable as to plaintiffs.

Reversed and remanded.

THEIS and O'BRIEN, JJ., concur.