(No. 83875.–

MARY DOYLE *et al.*, Appellees, v. HOLY CROSS HOSPITAL, Appellant.

*Opinion filed February 19, 1999.—Rehearing denied March 29, 1999.*

RATHJE, J., took no part.

FREEMAN, C.J., joined by McMORROW, J., concurring in part and dissenting in part.

HEIPLE, J., dissenting.

Dorothy Voss Ward, of Keck, Mahin & Cate, and Lord, Bissell & Brook (Hugh C. Griffin, R. Clay Bennett and Hugh S. Balsam, of counsel), all of Chicago, for appellant.

George C. Pontikes and Sheni Hajat, of Chicago, for appellees.

Frank J. Saibert and Tammy D. McCutchen, of Matkov, Salzman, Madoff & Gunn, of Chicago, and Mark S. Killion, of Springfield, for *amicus curiae* Illinois Manufacturers' Association.

Glenn A. Stanko, of Rawles, O'Byrne, Stanko & Kep-

ley, P.C., of Champaign, for *amicus curiae* Illinois Trial Lawyers Association.

JUSTICE MILLER delivered the opinion of the court:

In *Duldulao v. Saint Mary of Nazareth Hospital Center*, 115 Ill. 2d 482 (1987), this court held that provisions in an employee handbook may give rise to a binding contract with at-will employees who accept the terms of the contract by commencing or continuing their employment with the employer. The present appeal involves a related issue and concerns the question whether the terms of the contract so formed may be altered unilaterally by the employer to an employee's disadvantage and in the absence of a reservation of the right by the employer to make unilateral changes. The plaintiffs brought the present action in the circuit court of Cook County, alleging in their amended complaint that the defendant terminated their employment in violation of the provisions of the defendant's employee handbook; the plaintiffs sought recovery under theories of breach of contract and promissory estoppel. The circuit court of Cook County granted the defendant's motion to dismiss the amended complaint. The appellate court reversed, finding a cause of action. 289 Ill. App. 3d 75. We allowed the defendant's petition for leave to appeal (166 Ill. 2d R. 315(a)), and we now affirm the judgment of the appellate court.

The plaintiffs in this case were nurses employed by the defendant, Holy Cross Hospital, in Chicago. The plaintiffs worked for the defendant continuously until they were discharged, effective November 1, 1991. The defendant hired Mary Doyle in 1960, Leni Serra in 1968, and Susan Valderrama and Valerie Zorek in 1972. In 1971, the defendant issued to existing employees and new hires an employee handbook, which contained a number of policies and provisions regarding employment with the defendant. One of the policies pertained to dis-

charge, and it is the subject of the present appeal. According to the plaintiffs' amended complaint, policy number 7—G, "Economic Separation," stated:

"Holy Cross Hospital is committed to providing a working environment where employees feel secure in their job. We understand that job security is important to an employee and to that employee's family. There are instances, though, that for economic or other reasons it becomes apparent that the permanent elimination of departments, job classifications, and/or jobs must be made, and there is no reasonable expectation that employees affected could be placed in other positions in the hospital or be recalled for work in one year or less. To ensure that the economic separation is handled in an objective, structured, and consistent way, the following policies will be followed in determining which employees will be affected.

1. Job Classification
2. Length of Continuous Hospital Service
3. Ability and Fitness to Perform the Required Work.

\* \* \*

Because of the special needs of our patients, the following factors will be used in an economic separation affecting R.N.'s:

1. Nursing Areas of Expertise
2. Length of Service Within Each Area of Expertise
3. Ability and Fitness to Perform the Required Work

\* \* \*

Employees affected by an economic separation will be placed on a priority rehire list and will be contacted by the Human Resources Department if a position becomes available for which the separated employees may be eligible through experience, training, education and/or other qualifications. Priority rehire consideration shall be for a period of one year."

The defendant asserts that the 1971 handbook actually contained a different policy regarding terminations, but for purposes of this appeal the defendant assumes that the policy quoted above was the one in force in 1971.

The defendant later added disclaimers to the handbook. In 1983, after all four of the plaintiffs had begun

working for the defendant, the defendant promulgated policy 5—I, which provided:

"The Personnel Policies and other various Hospital employee and applicant communications are subject to change from time to time and are not intended to constitute nor do they constitute an implied or express contract or guarantee of employment for any period of time.

The employment relationship between the Hospital and any employee may be terminated at any time by the Hospital or the employee with or without notice."

The hospital discharged the four plaintiffs effective November 1, 1991. The plaintiffs commenced the present action on November 9, 1992, by filing a complaint in the circuit court of Cook County. In their complaint they sought recovery under a theory of breach of contract, contending that their discharges were in violation of the economic separation provisions of the 1971 employee handbook. The defendant moved to dismiss the complaint under section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1992)), and the trial judge granted the motion. At the same time, the judge allowed the plaintiffs to amend their complaint. The plaintiffs then filed an amended complaint, realleging the breach of contract theory and adding a theory of promissory estoppel. The amended complaint comprised eight counts; the first four counts sought recovery for each of the individual plaintiffs on a theory of breach of contract, and the second four counts sought recovery for each plaintiff on a theory of promissory estoppel. The defendant again moved for dismissal of the complaint under section 2—615 of the Code of Civil Procedure. Following a hearing, the trial judge granted the motion with prejudice. The plaintiffs appealed that judgment to the appellate court, which, in an unpublished order, reversed the judgment and remanded the cause, concluding that the dismissal was improper because it was based on matters outside the complaint—the disclaimer in the later handbook.

Following remand, the defendant sought dismissal of the plaintiffs' amended complaint under a different provision of the Code of Civil Procedure, section 2—619(a)(9) (735 ILCS 5/2—619(a)(9) (West 1994)). This motion was heard by a different judge, who granted the requested relief. In dismissing the amended complaint, the judge relied on the appellate court's opinion in *Condon v. American Telephone & Telegraph Co.*, 210 Ill. App. 3d 701 (1991), which had held that an employer may unilaterally alter the terms of an employee handbook to an employee's disadvantage even though the employer had not previously reserved the right to do so.

The plaintiffs appealed, and the appellate court reversed, concluding that the defendant's modification of the terms of the handbook was not enforceable against the plaintiffs because it was not supported by consideration. 289 Ill. App. 3d at 79-80. In addition, the appellate court rejected the defendant's alternative argument that the terms of the original handbook provision were not sufficiently clear and definite to constitute a promise. 289 Ill. App. 3d at 78-80. We allowed the defendant's petition for leave to appeal. 166 Ill. 2d R. 315(a). We later granted leave to the Illinois Manufacturers' Association and the Illinois Trial Lawyers Association to submit briefs as *amici curiae*. 155 Ill. 2d R. 345.

The trial court dismissed the amended complaint under section 2—619(a)(9) of Code of Civil Procedure, which permits the dismissal of an action when "the claim asserted *** is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2—619(a)(9) (West 1996). The purpose of a motion to dismiss under section 2—619 is to provide litigants with a method for disposing of issues of law and easily proved issues of fact at the beginning of a case, reserving disputed questions of fact for a trial, if necessary. *Zedella v. Gibson*, 165 Ill. 2d 181, 185 (1995). The question on

appeal from an order granting dismissal under section 2—619 is "whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17 (1993).

The "affirmative matter" raised by the defendant in this case is the disclaimer it inserted in its employee handbook in 1983, after the four plaintiffs began their employment at the hospital. The threshold question before us is a narrow one, involving an employer's power to make unilateral changes to provisions in an employee handbook, in the absence of a previous reservation of the right to do so, that would operate to the disadvantage of existing employees. If an employer may not make such changes, then we must determine whether the provision at issue here is sufficiently clear to form the basis for a contractual term.

The plaintiffs contend that the provisions of the employee handbook allegedly in effect in 1971 created contractual rights that they are now entitled to enforce. The plaintiffs argue that the appellate court below correctly determined that handbook modifications made unilaterally by their employer in later years cannot abrogate rights they acquired prior to that time. The plaintiffs submit that the disclaimer promulgated by the defendant was not supported by consideration, and they deny that consideration can be found in their continuing to work for the defendant. The plaintiffs assert that finding consideration in their continued employment would mean that they would have had to quit their jobs in order to reject the defendant's new offer, which would have rendered meaningless the rights they acquired under the original version of the employee handbook.

The defendant does not challenge the proposition that any modification to the terms of the employee

handbook must be supported by consideration. The defendant argues, however, that consideration may be found in these circumstances in an employee's decision to continue to work for an employer after the employee handbook has been amended. According to the defendant, consideration exists because the plaintiffs could have quit if they were dissatisfied with the new provisions. The defendant and *amicus* Illinois Manufacturers' Association also contend that a number of policy concerns further support the view that an employer's unilateral modifications of an employee handbook may operate against existing employees even though the employer did not previously reserve the right to make changes of that nature.

This court first recognized the enforceable effect of employee handbook provisions in *Duldulao v. Saint Mary of Nazareth Hospital Center*, 115 Ill. 2d 482 (1987). The plaintiff in that case argued that an employee handbook that had been distributed to all employees and that set forth specific procedures for the dismissal of employees gave rise to a contract between the employer and employees. The *Duldulao* court concluded that an employee handbook or policy statement may create contractual rights if the traditional requirements for contract formation are satisfied. The court explained:

"First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement. When these conditions are present, then the employee's continued work constitutes consideration for the promises contained in the statement, and under traditional principles a valid contract is formed." *Duldulao*, 115 Ill. 2d at 490.

Given the contractual rationale of *Duldulao*, we find

it difficult to reconcile the defendant's position with the requirements for contract formation and modification. Applying "traditional principles" of contract law, as *Duldulao* did, we conclude in this case that the defendant's unilateral modification to the employee handbook lacked consideration and therefore is not binding on the plaintiffs. A modification of an existing contract, like a newly formed contract, requires consideration to be valid and enforceable. *Chicago College of Osteopathic Medicine v. George A. Fuller Co.*, 776 F.2d 198, 208 (7th Cir. 1985) (applying Illinois law); *Schweickhardt v. Chessen*, 329 Ill. 637, 646-47 (1928); *De Fontaine v. Passalino*, 222 Ill. App. 3d 1018, 1028 (1991). Consideration consists of some detriment to the offeror, some benefit to the offeree, or some bargained-for exchange between them. *Lipkin v. Koren*, 392 Ill. 400, 406 (1946). "Any act or promise which is of benefit to one party or disadvantage to the other is a sufficient consideration to support a contract. [Citation.]" *Steinberg v. Chicago Medical School*, 69 Ill. 2d 320, 330 (1977). In the present case, we are unable to conclude that consideration exists that would justify our enforcement of the modification against existing employees. Because the defendant was seeking to reduce the rights enjoyed by the plaintiffs under the employee handbook, it was the defendant, and not the plaintiffs, who would properly be required to provide consideration for the modification. But in adding the disclaimer to the handbook, the defendant provided nothing of value to the plaintiffs and did not itself incur any disadvantage. In fact, the opposite occurred: the plaintiffs suffered a detriment—the loss of rights previously granted to them by the handbook—while the defendant gained a corresponding benefit.

For these reasons, we agree with the plaintiffs that, after an employer is contractually bound to the provisions of an employee handbook, unilateral modification

of its terms by the employer to an employee's disadvantage fails for lack of consideration. This was the view adopted by the appellate court below, and a number of other courts have also relied on this reasoning in rejecting efforts by employers to unilaterally modify handbook terms or other personnel policies to the disadvantage of existing employees and in the absence of a reservation of the right to do so. Applying well-established principles of contract law, these courts have held that modifications to terms and provisions of employee handbooks cannot apply to existing employees in the absence of consideration. Moreover, these cases have held that the requisite consideration for a modification that would operate to an employee's disadvantage is not supplied simply by the employee's continued work for the employer. That is to say, in addition to an offer and acceptance, consideration must be found elsewhere, whether in the form of a new benefit to the employee or a new detriment to the employer, or as the product of mutual agreement. *Robinson v. Ada S. McKinley Community Services, Inc.*, 19 F.3d 359 (7th Cir. 1994); *Pankow v. WestAmerica Mortgage Co.*, 740 F. Supp. 1309 (N.D. Ill. 1990); *Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 234 Conn. 1, 662 A.2d 89 (1995); *Brodie v. General Chemical Corp.*, 934 P.2d 1263 (Wyo. 1997). As the Seventh Circuit Court of Appeals observed in *Robinson*, a factually similar case involving Illinois law:

"To find consideration to support this purported modification, there must be some benefit to Robinson [the employee], detriment to McKinley [the employer], or Robinson's continued work under the 1986 Manual must have been a bargained for exchange. There was no consideration here. McKinley does not claim that Robinson received any benefit for giving up her protections, and McKinley did not suffer any detriment. Moreover, there was no bargained for exchange to support Robinson's relinquishment of the protections she was entitled to under the 1978 Manual. Therefore, we find that Robinson's continued work does

not constitute consideration for the purported modification." *Robinson*, 19 F.3d at 364.

We agree with the plaintiffs that consideration was lacking for the unilateral modification made by the defendant here. Contrary to the defendant's argument, we are unable to find the required consideration in the plaintiffs' continuation of their employment with the defendant, following the amendment of the employee handbook. The fallacy of the defendant's premise is readily apparent: to accept the defendant's reasoning, that the plaintiffs must supply consideration for a change in the contract to their detriment, and to locate consideration in the plaintiffs' continued work, as the defendant urges, would paradoxically require the plaintiffs to quit their jobs in order to preserve the rights they previously held under the employee handbook. As the appellate court below explained:

"If, as Holy Cross argues, plaintiffs' continued work amounts to acceptance and consideration for the 'loss' of their right under the economic-separation policy, then the only way plaintiffs could preserve and enforce their contractual rights would have been to quit working after Holy Cross unilaterally issued the disclaimer. This would make the promise by Holy Cross not to terminate, except under the terms of the economic-separation policy, illusory. The illusion (and the irony) is apparent: to preserve their right under the economic-separation policy the plaintiffs would be forced to quit." 289 Ill. App. 3d at 80.

The defendant argues, however, that language in *Duldulao* supports the theory that an employee's decision to continue working for an employer in the wake of a change in the employee handbook may constitute consideration. The appellate court in *Condon v. American Telephone & Telegraph Co.*, 210 Ill. App. 3d 701 (1991), used similar reasoning when it concluded that an employer may bind existing employees to unilateral modifications it makes to an employee handbook. The *Condon* court explained:

"The implied contract which arises under the *Duldulao* doctrine is unilateral in nature. In setting out its test for contract formation, the *Duldulao* court states in part three of the test that the employee accepts the offer by working or *continuing to work*. [Citation.] The only way an employee could accept an offer by continuing to work is if the employee was already employed and the employer altered an existing policy. Implicit in this requirement is that the employer may unilaterally change its own policies." (Emphasis in original.) *Condon*, 210 Ill. App. 3d at 708.

Like the court in *Condon*, the defendant in the present case believes that *Duldulao*'s use of the phrase "continuing to work" means that an employee's decision to continue working for an employer provides fresh consideration for the employer's unilateral modification of an employee handbook. We do not agree. *Duldulao* invoked traditional contract principles in concluding that terms and provisions of an employee handbook may give rise to a binding and enforceable contract. As we have noted, it is well established in Illinois law that modification of a contract requires consideration, just as the contract initially formed does. We believe that *Duldulao*'s reference to continued work was intended to apply to cases in which an employer who did not previously have an employee handbook decides to promulgate one; in those circumstances, employees' continued work for the employer represents consideration for the handbook. *Duldulao* did not involve handbook modifications, and therefore the court in that case was not speaking to the situation involved here.

The defendant further argues that if continued employment does not constitute consideration for a disclaimer, then it also cannot constitute consideration for benefits that would be conferred on existing employees by later versions of a handbook. Thus, the defendant maintains that employees like the plaintiffs cannot take advantage of later benefits if they also refuse to be bound by later detriments. We do not agree. In that instance,

the employee's decision to accept the beneficial modification by his or her continued performance would be supported by consideration. Unlike the present case, in those circumstances the individual's decision to continue employment would provide consideration for the new benefit conferred by the employer.

The defendant and *amicus* also contend that considerations of public policy argue in favor of allowing employers a free hand in modifying provisions of employee handbooks with respect to existing employees. The defendant and *amicus* note that under the appellate court's result here, an employer could be bound for a lengthy period to the terms of an employee handbook issued long ago. In addition, they assert that adoption of the appellate court's result in this case would mean that different employees could be subject to different contract terms and provisions, depending on when a particular person was hired and what the employee handbook provided at that time. Although we are aware of these potential drawbacks, we note that this is a matter of contract and see no compelling reason here to relieve the defendant of the obligations it has voluntarily incurred. Employers who choose to set forth policies in employee handbooks and manuals as an inducement to attracting and retaining a skilled and loyal work force cannot disregard those obligations at a later time, simply because the employer later perceives them to be inconvenient or burdensome.

The defendant raises the alternative argument that the provisions at issue here did not contain a clear promise of termination rights under the circumstances alleged in the plaintiffs' amended complaint. The defendant asserts that the allegations in the plaintiffs' amended complaint demonstrate the absence of any violation of the economic separation policy contained in the 1971 handbook. The defendant notes that the economic

separation policy pertained to the "permanent elimination of departments, job classifications, and/or jobs," but that the plaintiffs allege that "there was in fact no permanent elimination of departments, job classifications, or jobs, as required by Policy No. 7—G." The defendant thus contends that the economic separation policy provides no guidance on what procedures must be followed in instances other than the permanent elimination of departments, job classifications, and jobs. The defendant therefore insists that the terminations alleged here do not fall within the scope of the economic separation policy.

In resolving this argument we need not consider the plaintiffs' assertion, made in their brief, and outside the record in the case, that they were informed by the defendant that their jobs were being permanently eliminated. We do not agree with the defendant's theory that it would have had a free hand in discharging its employees so long as it did not permanently eliminate "departments, job classifications, and/or jobs." Under the defendant's interpretation, the economic separation policy would have provided protection to employees only if the action was somehow characterized as "permanent" in nature, and would provide no protection in other circumstances. This would conflict, however, with the stated purpose of the policy, which was to promote stability in the work force and provide some assurance of continuity in employment. The plaintiffs could have reasonably believed that, apart from disciplinary actions, layoffs would be governed by the economic separation policy.

The plaintiffs argue, as an alternative contention before this court, that they have stated a cause of action for promissory estoppel in counts V through VIII of their amended complaint. Having concluded that an enforceable contract exists, we need not address this separate argument.

For the reasons stated, the judgment of the appellate court, which reversed the circuit court and remanded the cause for further proceedings, is affirmed.

*Judgment affirmed.*

JUSTICE RATHJE took no part in the consideration or decision of this case.

CHIEF JUSTICE FREEMAN, concurring in part and dissenting in part:

I agree with the court that the employer's unilateral modification of the employee handbook fails for lack of consideration and that an enforceable contract exists between the parties. Therefore, I concur in today's opinion to the extent that it affirms the appellate court's decision to reverse the circuit court's dismissal of those counts in the amended complaint which sound in breach of contract. Unlike my colleagues, however, I would affirm that portion of the circuit court's order which dismissed the counts sounding in promissory estoppel, a theory that the appellate court did not discuss in its opinion and this court elects to "not address." See 186 Ill. 2d at 117.

I

Counts I through IV of plaintiffs' amended complaint allege a breach of contract action against defendant. In these counts, plaintiffs allege that defendant breached "Economic Separation" policy 7—G contained in the 1971 employee handbook when it discharged plaintiffs on November 1, 1991. Counts V through VIII allege an action based on the doctrine of promissory estoppel. In these counts, plaintiffs allege that they had reasonably relied upon "Economic Separation" policy 7—G contained in the 1971 handbook to their detriment. Defendant sought dismissal of the amended complaint pursuant to section 2—619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(9) (West 1994)). According to de-

fendant, certain disclaimers made in 1983 modified the 1971 handbook. The circuit court took the matter under advisement. On July 19, 1995, the circuit court issued a memorandum of opinion in which it found that no valid agreement existed between the parties "for purposes of a Duldulao theory or a promissory estoppel theory." Several weeks later, on August 8, 1995, the circuit court ordered the dismissal of plaintiffs' amended complaint with prejudice.

Plaintiffs thereafter sought review of the August 8, 1995, order and specifically included in their notice of appeal reference to the circuit court's earlier memorandum of opinion. The appellate court held that the circuit court erred in ruling that the 1983 disclaimers rendered policy 7—G unenforceable. 289 Ill. App. 3d 75. Notably absent from the appellate court's opinion is any reference to the promissory estoppel counts or the effect of its opinion on that theory of recovery. In fact, the appellate court's judgment line reads only "[r]eversed and remanded." 289 Ill. App. 3d at 80. This court today affirms that judgment (186 Ill. 2d at 106, 117) and does "not address" the promissory estoppel claims. One question arises from this procedural history—Is it only the breach of contract counts which have been reversed on appeal, or has the circuit court's dismissal order in its entirety been reversed? Both this court and the appellate court purport to reverse that order, yet do so without any comment on the propriety of the promissory estoppel claims. By "not addressing" the claims today, this court leaves the status of those dismissed counts unclear and creates potential confusion for both the parties and the circuit judge upon remand. That being the case, our discussion of the issue is warranted.

## II

Generally, courts have used the doctrine of promissory estoppel in order to enforce promises when consider-

ation is lacking, such as in cases involving gratuitous promises, charitable subscriptions, and certain intrafamily promises. J. Calamari & J. Perillo, The Law of Contracts §§ 6—1 through 6—3 (3d ed. 1987). However, in recent years, courts have expanded the use of the doctrine to enforce promises underlying otherwise defective contracts and promises made during the course of preliminary negotiations. In some instances, the doctrine has been employed to provide a remedy for reliance upon offers subsequently withdrawn. Calamari & Perillo, at § 6—5. But, in all instances, application of promissory estoppel is appropriate only in the absence of an express agreement. The doctrine serves to impute contractual stature based upon an underlying promise and to provide a remedy to the party who detrimentally relies on the promise. 2A A. Corbin, Corbin on Contracts § 196A, at 55-56 (Supp. 1991).

In Illinois, to establish a claim based on promissory estoppel, a plaintiff must allege and prove that (i) defendant made an unambiguous promise to plaintiff, (ii) plaintiff relied on such promise, (iii) plaintiff's reliance was expected and foreseeable by defendant, and (iv) plaintiff relied on the promise to its detriment. *Quake Construction, Inc. v. American Airlines, Inc.*, 141 Ill. 2d 281, 309-10 (1990). Although a party may plead claims for breach of contract and promissory estoppel in the alternative, our appellate court has held that "once it is established, either by an admission of a party or by *a judicial finding*, that there is in fact an enforceable contract between the parties ***, then a party may no longer recover under the theory of promissory estoppel." (Emphasis added.) *Prentice v. UDC Advisory Services, Inc.*, 271 Ill. App. 3d 505, 512 (1995), citing *Wagner Excello Foods, Inc. v. Fearn International, Inc.*, 235 Ill. App. 3d 224, 237 (1992). The appellate court explained its holding as follows:

"In contrast to the legal remedies which arise from a breach of contract, promissory estoppel is an equitable theory of recovery which permits the enforcement of promises that are unsupported by consideration. Where proof of a contract fails, and where refusal to enforce a party's promise would be unjust in light of the promisee's detrimental reliance, promissory estoppel becomes the appropriate form of redress. It is not available, however, where there is in fact a contract between the parties. In such a situation, promissory estoppel becomes superfluous." *Prentice*, 271 Ill. App. 3d at 513.

The analyses contained in both *Prentice* and *Wagner* were predicated on case law from across the nation. See *Prentice*, 271 Ill. App. 3d at 513-15 (discussing cases); *Wagner*, 235 Ill. App. 3d at 233-35 (analyzing cases). These cases hold that, once an enforceable contract has been found to exist, the doctrine of promissory estoppel is inapplicable. See *Union Mutual Life Insurance Co. v. Mowry*, 96 U.S. 544, 24 L. Ed. 674 (1878); *General Aviation, Inc. v. Cessna Aircraft Co.*, 915 F.2d 1038, 1042 (6th Cir. 1990); *Walker v. KFC Corp.*, 728 F.2d 1215, 1220 (9th Cir. 1984); *Youngman v. Nevada Irrigation District*, 70 Cal. 2d 240, 449 P.2d 462, 74 Cal. Rptr. 398 (1969). See also *Del Hayes & Sons, Inc. v. Mitchell*, 304 Minn. 275, 230 N.W.2d 588 (1975); *Great Lakes Aircraft Co. v. City of Claremont*, 135 N.H. 270, 608 A.2d 840 (1992); *Tuomala v. Regent University*, 252 Va. 368, 477 S.E.2d 501 (1996).

Plaintiffs, in their amended complaint, allege that, in reliance on "Economic Separation" policy 7—G contained in the 1971 contract, they gave up the opportunity to work elsewhere, thereby causing detriment. We today have held that plaintiffs' continued employment constituted the consideration necessary to make the 1971 handbook an enforceable contract. By remaining in their positions and presumably rendering satisfactory service, plaintiffs performed their part of the bargain and provided the consideration called for in the 1971 handbook. See *Duldulao v. Saint Mary of Nazareth Hospital*

*Center*, 115 Ill. 2d 482, 490 (1987). There is no occasion, therefore, to rely upon the doctrine of promissory estoppel, which, as noted above, is necessary only to supply consideration for a promise when no actual consideration was given by the promisee. Plaintiffs admit as much here in this court, for they have characterized their promissory estoppel claims as an "alternative" theory of recovery "if the Court does not find that a valid enforceable contract exists." As the California Supreme Court has stated,

> "[t]he purpose of [promissory estoppel] is to make a promise binding, under certain circumstances, without consideration in the usual sense of something bargained for and given in exchange. If the promisee's performance was requested at the time the promisor made his promise and that performance was bargained for, the doctrine is inapplicable." *Youngman*, 70 Cal. 2d at 249, 449 P.2d at 468, 74 Cal. Rptr. at 404.

In this case, plaintiffs agreed to forgo employment elsewhere in order to bind themselves to the 1971 handbook. " 'Where *** the performance which is said to satisfy the detrimental reliance requirement of the promissory estoppel theory is the same performance which represents consideration for the written contract, the doctrine of promissory estoppel is not applicable.' " *General Aviation*, 915 F.2d at 1042, quoting *General Aviation, Inc. v. Cessna Aircraft Co.*, 703 F. Supp. 637, 647 n.10 (W.D. Mich. 1988).

This court, like the appellate court below, has held that an enforceable contract exists between the parties. In other words, plaintiffs are now entitled to contractual remedies upon proving defendant's breach and, therefore, need not resort to an equitable remedy originally designed to prevent injustice when the promise at issue did not rise to the level of an enforceable contract. See 28 Am. Jur. 2d *Estoppel & Waiver* § 48 (1966). Although the question of whether a contract exists between these

parties has been affirmatively answered by this court, the parties may, upon remand, continue to dispute the terms of the contract and the obligations it created, thereby creating a question of fact as to whether a breach of the contract did indeed occur. However, for purposes of the promissory estoppel question at issue here, it is irrelevant whether plaintiffs will ultimately prove a *breach* of the contract because "it is the existence of consideration and not the existence of a breach which precludes reliance on the theory of promissory estoppel." *Prentice*, 271 Ill. App. 3d at 513 n.2.

In light of the above, I would hold that the remedy of promissory estoppel is no longer available to plaintiffs under the facts of this case. I, therefore, would affirm that portion of the circuit court's order which dismissed counts V through VIII of the amended complaint.

JUSTICE McMORROW joins in this partial concurrence and partial dissent.

JUSTICE HEIPLE, dissenting:

The plaintiffs in this breach of contract action, all at-will employees, were hired as nurses by the defendant-hospital in the late 1960s and early 1970s. In 1971, the hospital distributed an employee handbook containing an economic separation policy pertaining to the "permanent elimination of departments, job classifications, and/or jobs."[1] Later, in 1983, the hospital added a provision to the handbook which stated that employees could be

---

[1]Policy number 7—G, "Economic Separation," provides in part as follows:

> "Because of the special needs of our patients, the following factors will be used in an economic separation affecting R.N.'s.
> 1. Nursing Areas of Expertise
> 2. Length of Service Within Each Area of Expertise
> 3. Ability and Fitness to Perform the Required Work
> * * *

terminated at any time with or without notice.[2] The plaintiff-nurses were discharged in 1991, and thereafter filed this breach of contract action against the hospital.

The majority holds that the hospital's handbook constituted an enforceable contract which it breached with the nurses by discharging them without the benefit of the economic separation policies contained in the handbook. Moreover, according to the majority, the disclaimer added to the handbook in 1983 was insufficient to supplant the economic separation policy because the disclaimer was not supported by a new consideration. I dissent because, under the facts of this case, the nurses were discharged under circumstances which do not entitle them to the procedures set forth in the economic separation clause. The majority therefore improperly reaches the question of whether the handbook modification made in 1983 required new consideration, and then compounds its error by making bad public policy in the process.

Although the clear and unambiguous language of the handbook's economic separation policy applies to the "*permanent* elimination of departments, job classifications, or jobs" (emphasis added), the complaint alleges

Employees affected by an economic separation will be placed on a priority rehire list and will be contacted by the Human Resources Department if a position becomes available for which the separated employees may be eligible through experience, training, education and/or other qualifications. Priority rehire consideration shall be for a period of one year."

[2]Policy 5—I provides:

"The Personnel Policies and other various Hospital employee and applicant communications are subject to change from time to time and are not intended to constitute nor do they constitute an implied or express contract or guarantee of employment for any period of time.

The employment relationship between the Hospital and any employee may be terminated at any time by the Hospital with or without notice."

and thereby admits that "there was in fact *no permanent* elimination of departments, job classifications, or jobs, as required by Policy No. 7—G." (Emphasis added.) Accordingly, because the nurses were not discharged due to some type of "permanent" job elimination, they are not entitled to the economic separation procedures set forth in the handbook.

Furthermore, the majority's contention that reliance on the plain language of the handbook here would serve to defeat the stated purpose of the handbook policy is flatly wrong. Although the handbook cites stability in the workplace as the purpose for the economic separation policy, the majority elevates hortatory language above specific provisions and then erroneously assumes that stability can only be achieved by application of the policy to *all* employee discharges. Common sense tells us, however, that workplace stability can be furthered by providing separation procedures in some cases but not others. An employer is unrestricted in deciding how much employment security to provide to at-will employees.

Where, as here, the language of the economic separation policy applies only to permanent job eliminations, this court has no justification to ignore that language and gratuitously broaden the scope of its coverage beyond the express language of the handbook. Accordingly, the majority errs when it purports to apply " 'traditional principles' of contract law" (186 Ill. 2d at 112), but ignores the cardinal rule of contract interpretation— namely, that the intent of the parties is best ascertained from the *plain language* of a written contract. See *Western Illinois Oil Co. v. Thompson*, 26 Ill. 2d 287, 291 (1962). Since this court applies traditional contract principles in deciding whether a handbook *forms* a contract, it has the corollary duty to apply traditional contract principles in *interpreting* that handbook.

Secondly, the majority creates bad public policy in

holding that an employee handbook may not be amended without new consideration. As the hospital and *amicus* point out, under the majority's holding, a large employer could now have literally hundreds of separate employment contracts, depending on the date when particular employees were hired and the particular language contained in the handbook at the time of each individual hiring. The majority, however, is unsympathetic because "this is a matter of contract and [we] see no compelling reason here to relieve the defendant of the obligations it has voluntarily incurred." 186 Ill. 2d at 116. Such supposed obligations, however, were neither stated nor contemplated by the employer. Rather, they are obligations created out of thin air by the majority.

Parties should be bound by the bargains they strike, but the majority overlooks the fact that this court did not construe an employee handbook as a binding contract until *Duldulao v. Saint Mary of Nazareth Hospital Center*, 115 Ill. 2d 482 (1987), a full 16 years after the handbook in this case was distributed. Indeed, at the time the handbook was distributed, not a single published decision in Illinois held that an employee handbook constituted an enforceable contract.

Since the state of the law at the time the handbook was promulgated was that handbooks did not create binding contractual duties, the majority's presumption that the hospital should have known it was creating a binding contract via its handbook is completely untenable. This court changed the rules on employers in *Duldulao* by applying contract principles to employee handbooks. And today, the majority creates new chaos in the workplace by expanding *Duldulao* to handbook modifications.

Finally, the majority's entire discussion of whether handbook modifications must be supported by new consideration is nothing but *dicta*. As previously stated, the plain and unambiguous language of the handbook

indicates that the economic separation clause in the handbook has no application to the facts in this case. The majority therefore unnecessarily and erroneously reaches the issue concerning the handbook modification. Thus, the handbook at issue confers no rights on the plaintiff nurses and no duties on the hospital to refrain from discharging at-will employees.

Accordingly, for the reasons stated, I dissent.