NOTICE

Decision filed 05/16/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 220576-U

NO. 5-22-0576

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| BANKSTON CREEK CORPORATION, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Saline County. |
| | ) | |
| v. | ) | No. 17-LM-132 |
| | ) | |
| MK INTERNATIONAL, LLC, | ) | Honorable |
| | ) | Jeffrey A. Goffinet, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Justices Cates and Boie concurred in the judgment.

**ORDER**

¶ 1   *Held*: We reverse the circuit court's dismissal of defendant's fifth amended third-party complaint claim for promissory estoppel, where defendant alleged sufficient facts to state such claim. We reverse the court's judgment in favor of plaintiff on plaintiff's amended complaint claim for breach of contract based on defendant's failure to purchase the monthly minimum amount of product required by contract, where plaintiff failed to prove damages. We affirm in all other respects.

¶ 2   Plaintiff, Bankston Creek Corporation (BCC), filed an amended complaint against defendant, MK International, LLC (MKI), asserting two breach of contract claims. MKI filed a fifth amended answer to BCC's amended complaint, asserting affirmative defenses and counterclaims for breach of contract, breach of implied covenant of good faith and fair dealing, promissory estoppel, fraudulent misrepresentation, and civil conspiracy. MKI additionally filed a fifth amended third-party complaint, asserting the following: fraudulent misrepresentation and

1

civil conspiracy claims against the president of BCC, Jim Brown, Southern Illinois Power Cooperative (SIPC), and SIPC's vice president, Leonard Hopkins; tortious interference with a contract claims against SIPC and Hopkins; tortious interference with a business expectancy claims against SIPC and Hopkins; and a promissory estoppel claim against SIPC. The Saline County circuit court subsequently dismissed, pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2018)), MKI's counterclaims against BCC for fraudulent misrepresentation and civil conspiracy, as well as all claims asserted in MKI's third-party complaint. Shortly before the scheduled bench trial, the court denied MKI's requests for a continuance to conduct discovery. Following the bench trial, the court entered judgment for BCC and against MKI on BCC's breach of contract claims in the amount of $132,344.05 plus costs of suit. The court also entered judgment for BCC and against MKI on MKI's remaining counterclaims.

¶ 3       MKI appeals, arguing that the circuit court erred by (1) entering judgment in favor of BCC on BCC's breach of contract claims, (2) ruling against MKI on MKI's counterclaims, (3) dismissing MKI's counterclaims against BCC for fraudulent misrepresentation and civil conspiracy, (4) dismissing MKI's fifth amended third-party complaint, and (5) denying MKI's requests to continue to conduct discovery. For the following reasons, we affirm in part, reverse in part, and remand the cause for further proceedings.

¶ 4                                          BACKGROUND

¶ 5       This case has a lengthy and complicated procedural history. The common law record consists of 1728 pages, the report of proceedings consists of 920 pages, and the exhibits consist of 249 pages. In the interest of brevity, we recite only the facts necessary for an understanding of the case and our disposition of the issues raised on appeal.

2

¶ 6                          A. Events Preceding the Lawsuit

¶ 7    On October 15, 2008, BCC entered into a contract with SIPC for the purpose of investigating and testing potential uses of Spent Bottom Bed Ash (SBBA), a byproduct generated by SIPC's coal burner (BCC/SIPC Agreement). The BCC/SIPC Agreement commenced on October 1, 2008, and continued to March 31, 2014, with an opportunity for an extension to March 31, 2019, if BCC found a marketable use for SBBA. The BCC/SIPC Agreement granted BCC an interest in SBBA sales for a 10-year period if BCC found a marketable use. The BCC/SIPC Agreement provided for the following: a six-month testing period during which no SBBA would be sold; an initial five-year period where BCC and SIPC would each receive 50% of the selling price of SBBA; and a second five-year period where BCC could match the highest bid for SBBA from any other source and continue to receive 50% of the selling price of SBBA. The BCC/SIPC Agreement further provided that the arrangement would end after the second five-year period, allowing SIPC to freely market SBBA.

¶ 8    BCC subsequently entered into a contract with Freedom Companies (Freedom) for the sale and purchase of a portion of the SBBA that BCC purchased from SIPC (BCC/Freedom Agreement). Thereafter, Freedom retrieved SBBA from SIPC and SIPC billed BCC for the SBBA that Freedom retrieved pursuant to the terms of BCC/SIPC Agreement. BCC then billed Freedom for the SBBA under the terms of the BCC/Freedom Agreement.

¶ 9    On March 31, 2014, BCC and SIPC entered into an extension of the BCC/SIPC Agreement (First Extension). BCC and SIPC entered into an additional extension of the BCC/SIPC Agreement (Second Extension) on July 1, 2016.

¶ 10    In 2015, prior to the Second Extension, Freedom began selling SBBA to MKI. MKI, in turn, sold the SBBA to coal mines under the brand name BedCur 123.

3

¶ 11    In late 2016, Freedom experienced financial issues and was unable to timely pay BCC for the SBBA. BCC considered terminating its contract with Freedom. MKI approached BCC for the purpose of obtaining an agreement to purchase SBBA directly from BCC.

¶ 12    On February 27, 2017, BCC entered into a contract with MKI for the sale and purchase of a portion of the SBBA that BCC purchased from SIPC (BCC/MKI Agreement). The BCC/MKI Agreement indicated that MKI intended to market and resell the SBBA purchased from BCC "as a product known as BedCur 123." The contract included, *inter alia*, the following provisions:

> "2. **Term of the Agreement.** This agreement shall commence on [*sic*] as of February 1, 2017, \*\*\* and shall continue until midnight on March 31, 2019 whereupon it shall terminate, unless renewed for an additional term by mutual written agreement. However, in the event that BCC's contract with SIPC is extended for a period extending through March, 2022 under the same terms and conditions as the existing contract B[C]C agrees to automatically extend this contract until midnight on March 31, 2022. In the event any changes are made by SIPC in a 2019 – 2022 extension agreement between SIPC and BCC, such changes shall be incorporated into the 2019 – 2022 extension agreement between BCC and MKI.
>
> 3. **Product and Quantity**. The Parties acknowledge that the estimated daily production of SBBA is 150 to 200 tons. [BCC] agrees to sell to [MKI], and [MKI] has the option to purchase, all SBBA produced on a daily basis, during the term of this Agreement. If [MKI] is unable to, or elects not to, take any portion of the daily output of SBBA, [BCC] may retain and utilize the SBBA not taken by [MKI] in any manner it chooses, except those proscribed in Paragraph 7 below. [MKI] agrees to purchase a minimum of 1,000 tons of SBBA per month during the term of this Agreement or any extension thereof. If [BCC] is unable to deliver 1,000 tons of SBBA in a given calendar month, [MKI] shall only be required to purchase the quantity available for delivery during such month.
>
> 4. **Price.** The price of the Purchased Material shall be as follows: $15.00 per ton FOB at the SIPC at Lake of Egypt, Illinois. The amount of tonnage purchased shall be determined by weight tickets from the scales at the point of delivery.
>
> 5. **Existing Debt Owed to BCC.** The Parties acknowledge that there is an existing debt of $48,205.00 owed to [BCC] for past sales of [SBBA] through February 1, 2017 ('Existing Debt'). [MKI] agrees to pay said indebted to BCC in full by wire transfer within twenty-four (24) hours of the execution of this agreement by both parties. Failure to make such payment shall be a default by [MKI] and this contract shall immediately terminate.
>
> \*\*\*

4

7. **Use of Purchased Material and SBBA.** The Parties acknowledge that [MKI] intends to market the Purchased Material to coal mines throughout North America and South America as a product known as BedCur 123. BCC agrees not to sell any SBBA to any other person or entity for utilization in coal mines in North America or South America, during the term of this agreement, provided however, [BCC] may market and sell precast concrete products utilizing SBBA or a fraction thereof. Any such products may be sold to coal mines in North America and South America. [BCC] may also market SBBA in engineering applications on non-coal mine construction projects in that portion of Illinois located south of Interstate I-64.

The Parties further acknowledge that [MKI] intends to market the Purchased Material as BedCur 123 to potential customers in various other North American and South American markets outside the coal markets. [MKI] may supply BedCur 123 into markets outside the coal markets only upon written approval of [BCC]. [BCC] agrees not to sell any SBBA to any other person or entity for utilization in markets identified by [MKI] and approved by [BCC], in the same manner and for the same purpose as [MKI's] potential customers, during the term of this agreement. In the event that [BCC] does not approve one or more of the markets identified by [MKI], [BCC] agrees not to sell any SBBA to any other person or entity for utilization in the unapproved markets, in the same manner and for the same purpose proposed by [MKI], during the term of this agreement.

8. **Payments.** [BCC] shall bill [MKI] on a monthly basis by the 3rd of the month for Purchased Material received by [MKI] the prior month. Payment shall be made to [BCC] by [MKI] *** by the 15th day of the month. [BCC] reserves the right, among other remedies, either to terminate this Agreement or to suspend further deliveries upon failure of [MKI] to make any payments as herein provided.

9. **Force Majeure.** Neither party shall be liable for its failure to perform hereunder due to any contingency beyond its reasonable control, including acts of God, fires, floods, wars, sabotage, accidents, labor disputes or shortages, governmental laws, ordinances, inability to obtain material, equipment or transportation, and any other similar or different contingency. The party whose performance is prevented by any such contingency shall have the right to omit during the period of such contingency all or any portion of the quantity deliverable during such period, whereupon the total quantity deliverable under this Agreement shall be reduced by the quantity so omitted. In no event shall [BCC] be obligated to purchase material from others in order to enable it to deliver material to [MKI] hereunder. Force Majeure shall include any action by SIPC which results in the temporary or permanent cessation of the generation of SBBA."

Paragraph 16 of the BCC/MKI Agreement included the following provision: "This Agreement contains all of the representations and agreements between the parties hereto."

¶ 13    After BCC and MKI signed the BCC/MKI Agreement, MKI retrieved its desired quantity of SBBA from SIPC. At the end of each month, SIPC billed BCC for the SBBA that MKI retrieved, and BCC paid SIPC for the SBBA pursuant to the BCC/SIPC Agreement. BCC, in turn, sent MKI an invoice for the SBBA pursuant to the BCC/MKI Agreement. BCC and MKI continued this operation from February 2017 to September 2017. MKI utilized Freedom to handle its BedCur 123 product.

¶ 14    On March 16, 2017, MKI notified BCC and SIPC that it had agreed to allow another company, Crown Products, to handle its BedCur 123 product instead of Freedom. In March or April 2017, one of Freedom's owners, Mike Orr, approached SIPC seeking to purchase SBBA directly from SIPC. Orr advised that issues arose between MKI and Freedom which caused MKI to seek another processor. Negotiations between Orr and SIPC continued through May 2017, at which time SIPC agreed to sell SBBA to Orr's new company, JMO Enterprises (JMO).

¶ 15    On May 22, 2017, SIPC sent BCC a letter regarding SIPC's direct sales to JMO. SIPC notified BCC of BCC's right to match JMO's bid for the SBBA.

¶ 16    In July 2017, SIPC agreed to sell SBBA directly to Crown Products. After learning of SIPC's actions, MKI demanded that BCC take action to stop SIPC's direct sales of SBBA to other parties. MKI's demands continued after SIPC began selling SBBA to Crown Products. BCC did not take action to stop SIPC's direct sales of SBBA to other parties.

¶ 17    MKI subsequently stopped payment on a check to BCC for SBBA that MKI obtained in July 2017 based on BCC's alleged refusal to prevent SIPC from selling SBBA to other parties.

MKI picked up SBBA from SIPC under the BCC/MKI Agreement in August 2017 but did not pay BCC's invoice for the SBBA obtained in August 2017.

¶ 18                                   B. The Lawsuit

¶ 19    On September 28, 2017, BCC filed a complaint against MKI, asserting a breach of contract claim based on MKI's failure to pay invoices, dated August 2, 2017, and September 1, 2017, for the SBBA obtained in the months of July and August 2017. A copy of the BCC/MKI Agreement was attached to the complaint as an exhibit. The complaint alleged that MKI purchased 1170.10 tons of SBBA at the contract price of $15 per ton in July 2017, and that BCC sent MKI an invoice in the amount of $17,551.50 on August 2, 2017, for the SBBA that MKI purchased in July 2017. The invoice indicated that MKI's payment was due on or before August 15, 2017, pursuant to the terms of the contract. A copy of the invoice was attached to the complaint as Exhibit B. The complaint alleged that MKI submitted a check for the invoice, dated August 31, 2017, but the check was not honored by the bank upon which it was drawn because MKI initiated a stop payment order. The complaint alleged that the August 2, 2017, invoice remained unpaid.

¶ 20    The complaint further alleged that MKI purchased 1474.44 tons of SBBA at the contract price of $15 per ton in August 2017, and that BCC sent MKI an invoice in the amount of $22,116.60 on September 1, 2017, for the SBBA that MKI purchased in August 2017. The invoice indicated that the invoice amount was due and payable on or before September 15, 2017, pursuant to the terms of the contract. A copy of the invoice was attached to the complaint as Exhibit C. The complaint alleged that the September 1, 2017, invoice remained unpaid.

¶ 21    The complaint alleged that MKI's failure to pay the August 2, 2017, and September 1, 2017, invoices damaged BCC in the amount of $39,668.10. Accordingly, BCC requested that the circuit court enter judgment against MKI in that amount.

7

¶ 22   On January 19, 2018, MKI filed an answer, affirmative defenses, counterclaims, and a third-party complaint. On March 1, 2018, BCC filed an amended complaint. The amended complaint included the original breach of contract claim (count I) but added an additional breach of contract claim based on MKI's failure to purchase the 1000 ton minimum of SBBA since September 2017, as required by the BCC/MKI Agreement (count II).

¶ 23   Over the next two years, two of MKI's attorneys withdrew and MKI twice hired new counsel. In that time, the circuit court also dismissed MKI's affirmative defenses, counterclaims, and third-party complaints on four occasions but allowed MKI to amend its filings.

¶ 24   On August 18, 2020, MKI filed its fifth amended answer, affirmative defenses, counterclaims, and third-party complaint. MKI asserted five affirmative defenses: anticipatory repudiation, estoppel, failure to mitigate damages, breach of implied covenant of good faith and fair dealing, and impossibility. MKI asserted five counterclaims against BCC: breach of contract (counterclaim count I), breach of implied covenant of good faith and fair dealing (counterclaim count II), promissory estoppel (counterclaim count III), fraudulent misrepresentation (counterclaim count V),[1] and civil conspiracy (counterclaim count VI).

¶ 25   MKI's third-party complaint asserted the following claims: fraudulent misrepresentation against Brown (third-party complaint count I), fraudulent misrepresentation against Hopkins (third-party complaint count II), tortious interference with contract against Hopkins (third-party complaint count III), tortious interference with business expectancy against Hopkins (third-party complaint count IV), tortious interference with contract against SIPC (third-party complaint count V), tortious interference with business expectancy against SIPC (third-party complaint count VI), civil conspiracy against Brown (third-party complaint count VII), civil conspiracy against SIPC

---

[1]MKI omitted a counterclaim count IV from its fifth amended pleadings.

(third-party complaint count VIII), civil conspiracy against Hopkins (third-party complaint count IX), fraudulent misrepresentation claim against SIPC (third-party complaint count X), and promissory estoppel against SIPC (third-party complaint count XI).

¶ 26 On September 8, 2020, Brown filed a motion to dismiss MKI's third-party complaint claims of fraudulent misrepresentation (third-party complaint count I) and civil conspiracy (third-party complaint count VII) with prejudice, pursuant to section 2-615 of the Code. Shortly thereafter, on October 1, 2020, SIPC and Hopkins filed a motion to dismiss the remainder of MKI's amended third-party complaint with prejudice, pursuant to sections 2-615 and 2-619 of the Code (735 ILCS 5/2-615, 2-619 (West 2018)).

¶ 27 On January 8, 2021, MKI's third attorney filed a motion to withdraw at a hearing held via Zoom. Robert Black, MKI's president, objected to the motion to withdraw. The circuit court allowed Black and MKI's third attorney to submit additional arguments. The court allowed MKI's third attorney to withdraw over Black's objection on February 1, 2021.

¶ 28 On May 10, 2021, the circuit court held a case management conference. No counsel appeared for MKI, and the court granted MKI 30 days to obtain new counsel. MKI obtained its fourth attorney, who entered his appearance on June 23, 2021.

¶ 29 On June 25, 2021, the circuit court entered an order resolving the pending motions to dismiss and strike. The court noted that it previously allowed MKI a final chance to file a sufficient third-party complaint. The court concluded that MKI's fifth amended third-party complaint made no substantiative changes from the previously dismissed complaint and, thus, there were "still insufficient facts pled." Accordingly, the court granted the motions and dismissed MKI's fifth amended third-party complaint with prejudice. The court found that MKI's five affirmative defenses were "sufficiently pled to survive the pending motions and as such denie[d] the motion

9

without prejudice to raise the same arguments in the future." Regarding MKI's counterclaims against BCC, the court found that the breach of contract claim (counterclaim count I), breach of implied covenant of good faith and fair dealing claim (counterclaim count II), and promissory estoppel claim (counterclaim count III) were sufficient to withstand the pending motion. However, the court dismissed the fraudulent misrepresentation claim (counterclaim count V) and the civil conspiracy claim (counterclaim count VI), finding neither claim stated sufficient facts to state a cause of action.

¶ 30    On July 27, 2021, MKI's fourth attorney filed a motion to withdraw. MKI's attorney did not appear at a hearing held on August 20, 2021, and the court denied the motion to withdraw. The court set the matter for a bench trial on December 9, 2021, and December 10, 2021.

¶ 31    On August 23, 2021, MKI's fourth attorney filed a renewed motion to withdraw. The circuit court subsequently set the motion to withdraw for hearing on October 15, 2021, but noted that the bench trial remained set for December 9, 2021, and December 10, 2021. The court granted MKI's fourth attorney's motion to withdraw on October 15, 2021. The court allowed MKI 21 days to obtain new counsel and noted that the case remained set for bench trial.

¶ 32    On November 5, 2021, MKI's fifth attorney filed an entry of appearance. MKI's fifth attorney filed a motion to continue the trial date on November 17, 2021. BCC filed an objection to the motion on November 22, 2021.

¶ 33    On November 24, 2021, the circuit court held a Zoom hearing on MKI's motion to continue. The record on appeal does not include a transcript from the hearing. According to the court's docket entry from November 24, 2021, the court denied MKI's request for a continuance but reset the trial to March 17, 2022, due to a conflict in the court's trial schedule.

¶ 34    On December 17, 2021, MKI served a supplemental request for production and supplemental interrogatories on BCC. BCC filed a motion to quash MKI's supplemental discovery requests on January 6, 2022. BCC alternatively requested that the circuit court limit the required responses. BCC alleged that, at the hearing on the motion to continue, MKI indicated that it did not have discovery. BCC alleged that, on December 6, 2021, counsel for BCC provided new counsel for MKI with electronic copies of all discovery tendered to date. BCC alleged that MKI's supplemental interrogatories and supplement request to produce requested information previously produced to MKI, along with new items. BCC requested that the court quash MKI's supplemental discovery requests as untimely, given that MKI had four years to pursue discovery and the matter was set for trial. BCC further alleged that MKI's supplemental discovery was overbroad and unduly burdensome.

¶ 35    On January 18, 2022, the circuit court granted BCC's motion to quash. The court noted that MKI moved to continue the trial previously scheduled to begin on December 9, 2021, based, in part, on a request to conduct additional discovery. The court noted that it denied MKI's motion to continue trial but continued the trial due to a scheduling conflict. The court noted that it did not extend the time to conduct discovery and that MKI did not file a motion seeking leave to conduct discovery. The court further noted that it reasonably anticipated the bench trial would commence on December 9, 2021. Thus, the court concluded that discovery was untimely pursuant to *Ford v. Herman*, 316 Ill. App. 3d 726 (2000).

¶ 36    The circuit court held a four-day bench trial on BCC's amended complaint and MKI's fifth amended counterclaims on March 17, 2022, March 18, 2022, June 29, 2022, and June 30, 2022. Over BCC's objection, MKI presented the testimony of various witnesses regarding the negotiations that took place prior to the BCC/MKI Agreement. In addition, BCC presented

11

testimony and exhibits regarding the SBBA that MKI purchased between March 2017 and July 2017. The invoices provided the following information: BCC sent MKI an invoice for $8085 on March 1, 2017, which MKI paid in full; BCC sent MKI an invoice for $9480 on April 3, 2017, which MKI paid in full; BCC sent MKI an invoice for $10,665 on May 3, 2017, which MKI paid in full; BCC sent MKI an invoice for $6767.55 on June 1, 2017, which MKI paid in full; and BCC sent MKI an invoice for $10,834.80 on July 5, 2017, which MKI paid in full. The invoices and testimony demonstrated that BCC sent MKI an invoice for $17,551.50 on August 2, 2017, and MKI initially issued a check to BCC for that amount but later stopped payment on the check. The testimony demonstrated that MKI did not pay the balance of the August 2, 2017, invoice. The invoices and testimony demonstrated that BCC sent MKI an invoice for $22,116.60 on September 1, 2017, and that MKI did not pay the balance of the September 1, 2017, invoice.

¶ 37    The testimony and invoices demonstrated that BCC billed MKI for the minimum amount of SBBA that MKI was required to purchase under the BCC/MKI Agreement from October 2017 to February 2018. The evidence demonstrated that BCC sent MKI invoices for $15,000 on October 2, 2017, November 1, 2017, December 1, 2017, January 1, 2018, and February 1, 2018. The testimony demonstrated that MKI paid none of the invoices from October 2017 to February 2018.

¶ 38    On August 12, 2022, the circuit court entered a written judgment, setting forth its findings and rulings. The court found that the BCC/MKI Agreement was not ambiguous and, thus, refused to consider parol evidence in interpreting and determining the BCC/MKI Agreement's enforceability. The court additionally found that no other agreements were incorporated by reference into the BCC/MKI Agreement, and that the BCC/MKI Agreement was not incorporated by reference into any other agreement. The court determined that SIPC was not a party to the BCC/MKI Agreement. Regarding damages, the court found as follows:

12

"The Contract commenced February 1, 2017 and would expire on March 31, 2019. While the contract contained a provision for an automatic extension, MKI never purchased any SBBA after September 1, 2017, making the extended term irrelevant. The Contract had a 24-month term. There was no evidence that BCC would have been unable to sell 1,000 tons per month. The clear testimony was that SIPC produced more than enough SBBA to meet that obligation.

Irrespective if it is viewed as a 50/50 split or a supply contract, it is clear that BCC paid SIPC $7.50 a ton for each ton it provided to MKI. The Contract required MKI to pay $15 per ton. The initial term of the contract required MKI to purchase 24,000 tons @ $15 per ton. The total amount owed for the 24 months would be $225,000; BCC's net would be $112,500. However, it was obligated to SIPC for the SBBA delivered to MKI. The Court will not give a double recovery to BCC. The Court therefore adds back to the $112,500 the $7.50 a ton paid to SIPC for the SBBA sold to MKI. MKI owes $132,344.05 to BCC under the terms of the Contract. For the reasons more fully explained in the analysis, the Court does not award damages for the extended term."

Thus, the court entered judgment in favor of BCC and against MKI in the amount of $132,344.05.[2]

¶ 39    On September 6, 2022, MKI filed a notice of appeal. BCC did not appeal.

¶ 40                                     ANALYSIS

¶ 41    On appeal, MKI argues that the circuit court erred by (1) dismissing MKI's third-party complaint and certain counterclaims, (2) denying MKI's requests to continue to conduct discovery, (3) entering judgment in favor of BCC and against MKI on BCC's breach of contract claims, and

---

[2]Although not explicitly stated in the circuit court's order, it appears that the judgment amount included $19,834.05 for unpaid invoices and $112,500 for MKI's failure to meet its monthly minimum purchase amount. We note that the court appears to have erred in its calculation and that the correct amount would be $132,334.05.

13

(4) entering judgment in favor of BCC and against MKI on MKI's counterclaims. Before we address these arguments, we address BCC's claims that MKI's opening and reply briefs fail to comply with the briefing requirements set forth in Illinois Supreme Court Rule 341(h) (eff. Oct. 1, 2020).

¶ 42                                A. Rule 341(h)

¶ 43    BCC argues that MKI's opening brief violates Illinois Supreme Court Rule 341(h)(6), which requires that an appellant's brief include a statement of facts containing "the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal." Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020). BCC asserts that MKI improperly used the statement of facts section of its opening brief to advance its position on the issues. BCC claims that MKI's statement of facts assert numerous facts which were not established as fact but were arguments rejected by the circuit court. BCC further asserts that MKI's statement of facts improperly utilizes parol evidence as facts to change the intent of the BCC/MKI Agreement. We agree with BCC's assertions and will not take MKI's statement of facts as fact but view those facts as argument supporting MKI's position on appeal.

¶ 44    BCC also filed a motion to strike portions of MKI's reply brief, arguing that MKI violated Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) by raising issues not raised in its opening brief. Specifically, BCC requested that this court strike MKI's assertions that the BCC/SIPC Agreement is ambiguous, arguing that MKI did not raise this issue in its opening brief. MKI objected to the motion to strike, arguing that the assertions regarding ambiguity in the BCC/SIPC Agreement are in direct response to BCC's arguments in its response brief. We ordered BCC's motion to be taken with the case.

14

¶ 45 Rule 341(h)(7) provides that the appellant's brief must contain "[a]rgument, which shall contain the contentions of the appellant and the reasons therefor," and that "[p]oints not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." *Id.* However, Illinois Supreme Court Rule 341(j) provides that an appellant may respond to arguments presented in the appellee's brief. Ill. S. Ct. R. 341(j) (eff. Oct. 1, 2020). "It would be unfair for us to require an appellant, when writing his or her opening brief, to anticipate every argument that may be raised by an appellee." *People v. Whitfield*, 228 Ill. 2d 502, 514 (2007). Here, we agree with MKI that its assertions regarding ambiguity in the BCC/SIPC Agreement are in direct response to BCC's arguments in its response brief. Thus, we now deny BCC's motion to strike.

¶ 46 B. Dismissal of Counterclaims and Third-Party Complaint

¶ 47 MKI argues that the circuit court erred by dismissing its counterclaims and third-party complaint, with prejudice, pursuant to section 2-615 of the Code. Specifically, MKI argues that the court erred by dismissing its claims for fraudulent misrepresentation, tortious interference with a contract, tortious interference with a business expectancy, civil conspiracy, and promissory estoppel.

¶ 48 When reviewing a circuit court's dismissal pursuant to section 2-615 of the Code, "[w]e accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts." *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009). However, plaintiff "may not rely on mere conclusions of law or fact unsupported by specific factual allegations" to state a cause of action. *Id.* The complaint must set forth a legally and factually sufficient cause of action. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). A complaint should only be dismissed under section 2-615 of the Code if it is clearly apparent that no set of

15

facts can be proven that would entitle plaintiff to recovery. *In re Estate of Powell*, 2014 IL 115997, ¶ 12. "Conclusions of fact will not suffice to state a cause of action regardless of whether they generally inform the defendant of the nature of the claim against him." *Grund v. Donegan*, 298 Ill. App. 3d 1034, 1039 (1998). We review *de novo* an order granting a section 2-615 motion to dismiss. *Hartmann Realtors v. Biffar*, 2014 IL App (5th) 130543, ¶ 14.

¶ 49    1. Fraudulent Misrepresentation

¶ 50    We first consider MKI's argument that it pled sufficient facts to state causes of action for fraudulent misrepresentation against BCC (counterclaim count V), Brown (third-party complaint count I), Hopkins (third-party complaint count II), and SIPC (third-party complaint count X). The elements of fraudulent misrepresentation are (1) a false statement of a material fact; (2) knowledge or belief by the party making the statement that it is false; (3) intention to induce the other party to act; (4) the other party acts in reliance on the truth of the statements; and (5) the other party incurs damage as a result of its reliance on the statements. *Adcock v. Brakegate, Ltd.*, 247 Ill. App. 3d 824, 835 (1993), *aff'd*, 164 Ill. 2d 54 (1994) (citing *Soules v. General Motors Corp.*, 79 Ill. 2d 282, 286 (1980); *Board of Education  v. A, C & S, Inc.*, 131 Ill. 2d 428, 452 (1989)). When fraudulent misrepresentation is alleged, the pleadings must contain specific allegations of fact from which fraud is the necessary or probable inference. *Board of Education*, 131 Ill. 2d at 457. Specifically, "a plaintiff must at least plead with sufficient particularity facts establishing the elements of fraud, including what misrepresentations were made, when they were made, who made the misrepresentations and to whom they were made." *Id.*

¶ 51    As a general rule, a promise to perform an act, though accompanied at the time with an intention not to perform it, is not such a false representation that will constitute fraud. *Bank of Lincolnwood v. Comdisco, Inc.*, 111 Ill. App. 3d 822, 828 (1982). The exception to this general

rule is "where the false promise or representation of future conduct is alleged to be the scheme employed to accomplish the fraud." (Internal quotation marks omitted.) *Barille v. Sears Roebuck & Co.*, 289 Ill. App. 3d 171, 179 (1997) (quoting *Steinberg v. Chicago Medical School*, 69 Ill. 2d 320, 334 (1977)). To fall within the exception, a party must allege sufficient facts from which a scheme can be inferred. *Commonwealth Eastern Mortgage Co. v. Williams*, 163 Ill. App. 3d 103, 114 (1987).

¶ 52    In the present case, MKI's counterclaim failed to include sufficient factual allegations to state a fraudulent misrepresentation claim against BCC. MKI's counterclaim alleged that, in January 2017, Brown, acting within his scope and authority on behalf of BCC, advised "MKI that MKI would have [an] exclusive right to purchase all of BCC's SBBA for resale in the North American and South American coal mining industry, and that BCC was the exclusive purchaser of SIPC's SBBA, ensuring MKI of a reliable supply of SBBA to produce, market and sell Bedcur 123 without significant competition in specified markets." The counterclaim further alleged that "Brown specifically stated that the contract between SIPC and BCC provided that BCC would be the exclusive buyer of SBBA from SIPC." These alleged statements constituted a future action that could not be the basis for fraud, as evidenced by MKI's use of the words "would have" and "would be" in the allegations. MKI's counterclaim alleged no facts from which a scheme could be inferred, so as to fall within the exception of the general rule that fraud cannot be based upon promised future conduct. Thus, we conclude that MKI failed to sufficiently plead the first element of fraud with respect to these alleged statements. Accordingly, we hold that the circuit court properly dismissed counterclaim V.

¶ 53    MKI's argument regarding the circuit court's dismissal of the fraudulent misrepresentation claims against Brown (third-party complaint count I), Hopkins (third-party complaint count II),

17

and SIPC (third-party complaint count X) is insufficient to warrant review by this court. MKI merely asserts that "[c]ounts I, II and X of the Third-Party Complaint contain similar allegations and are also sufficient to state a cause of action for fraudulent misrepresentation." Supreme Court Rule 341(e)(7) requires that a party provide argument and citation to any relevant authority when raising an issue. Ill. S. Ct. R. 341(e)(7) (eff. Oct. 1, 2020); *People v. Guest*, 166 Ill. 2d 381, 414 (1995). By failing to do so, MKI forfeited review of these issues. See *In re Marriage of Auriemma*, 271 Ill. App. 3d 68, 72 (1994) ("[A] reviewing court is entitled to have the issues on appeal clearly defined with pertinent authority cited and a cohesive legal argument presented. The appellate court is not a depository in which the appellant may dump the burden of argument and research." (internal quotation marks omitted)). Accordingly, we will not consider MKI's arguments that the court erred by dismissing third-party complaint counts I, II, and X.

¶ 54    2. Tortious Interference with a Contract

¶ 55    Next, we consider MKI's argument that it pled sufficient facts to establish claims for tortious interference with a contract against Hopkins (third-party complaint count III) and SIPC (third-party complaint count V). In order to state a claim for tortious interference with a contract, a plaintiff "must plead (1) a valid contract between plaintiff and a third person, (2) that defendant was aware of the contractual relationship, (3) defendant's intentional and unjustified interference, (4) that a breach occurred because of the interference, and (5) damages." *Bosch v. NorthShore University Health System*, 2019 IL App (1st) 190070, ¶ 93 (citing *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 154-55 (1989)).

¶ 56    In the present case, MKI's counterclaim failed to allege sufficient facts to establish the third element—third-party defendants' intentional and unjustified interference. In third-party complaint count III, MKI alleged that Hopkins "intentionally and unjustifiably promised MKI that

18

SIPC would sell SBBA exclusively to BCC and BCC would manage the disposal of all SBBA not sold to BCC." In third-party complaint count V, MKI alleged that "SIPC intentionally and unjustifiably induced BCC to breach this contract, so as to allow SIPC to sell to MKI's and BCC's competitors in an effort to damage MKI." In both third-party complaint counts III and V, MKI alleged that Hopkins attempted "to get MKI to continue working with Orr," and that Hopkins reevaluated the BCC/SIPC Agreement after MKI refused to do so. In our view, these allegations failed to state any specific facts which demonstrated that Hopkins and SIPC intentionally induced BCC to breach the BCC/MKI Agreement, nor can such facts be inferred from a reading of the fifth amended complaint. A mere recital that the conduct of SIPC or Hopkins was intentional and unjustifiable was insufficient. Simply put, the allegations in third-party complaint counts III and V fail to include factual allegations demonstrating how the conduct of Hopkins and SIPC constituted intentional or unjustifiable interference with the contract between MKI and BCC. Accordingly, the circuit court properly dismissed amended third-party complaint counts III and V.

¶ 57    3. Tortious Interference with a Business Expectancy

¶ 58    We next consider MKI's argument that it pled sufficient facts to state claims for tortious interference with a business expectancy against Hopkins (third-party complaint count IV) and SIPC (third-party complaint count VI). In order to state a claim for intentional interference with a business expectancy, a plaintiff must plead (1) the existence of a valid business expectancy by the plaintiff; (2) the defendant's knowledge of the expectancy; (3) the defendant's intentional and unjustified interference which prevents the realization of the business expectancy; and (4) damages.

¶ 59    In the present case, similar to the tortious interference with a contract claims, MKI failed to allege sufficient facts to establish the third element—third-party defendants' intentional and

19

unjustified interference which prevents the realization of the business expectancy. MKI's allegations in third-party complaint counts IV and VI nearly mirror the allegations in the counts for tortious interference with a contract. In third-party complaint count IV, MKI alleged that "Hopkins intentionally and unjustifiably interfered" with the business relationship between MKI and BCC, "inducing and causing a breach or termination of the expectancy." Similarly, in count VI, MKI alleged that "SIPC intentionally and unjustifiably interfered" with the business relationship between MKI and BCC, "inducing or causing breach or termination of the expectancy." In our view, these allegations do not state any specific facts that demonstrate Hopkins and SIPC intentionally interfered with the business relationship between MKI and BCC. Again, the mere recital that the conduct of SIPC or Hopkins was intentional and unjustifiable was insufficient. Accordingly, the circuit court properly dismissed third-party complaint counts IV and VI.

¶ 60    4. Civil Conspiracy

¶ 61    We next consider MKI's argument that it alleged sufficient facts to state civil conspiracy claims against BCC (counterclaim count VI), Brown (third-party complaint count VII), SIPC (third-party complaint count VIII), and Hopkins (third-party complaint count IX). "Civil conspiracy is an intentional tort." *Reuter v. MasterCard International, Inc.*, 397 Ill. App. 3d 915, 927 (2010); see also *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 133-34 (1999). It is defined as " 'a combination of two or more persons for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means.' " *McClure*, 188 Ill. 2d at 133 (quoting *Buckner v. Atlantic Plant Maintenance, Inc.*, 182 Ill. 2d 12, 23 (1998)). In order to state a claim for civil conspiracy, a plaintiff must allege facts establishing both (1) an agreement to accomplish such a goal and (2) a tortious act committed in furtherance of that

20

agreement. *Id.* In addition, the plaintiff must allege an injury caused by the defendant. *Reuter*, 397 Ill. App. 3d at 927. Because a conspiracy is by its very nature secretive, it is rarely susceptible to "direct proof." *Id.* at 928. Nonetheless, Illinois is a fact-pleading jurisdiction, and a plaintiff must allege sufficient facts to bring the claim within the cause of action. *Id.* Accordingly, conclusory allegations that the defendants agreed with each other to achieve some illicit purpose are insufficient. *Id.*

¶ 62 Here, MKI failed to allege sufficient facts to state a cause of action for civil conspiracy against BCC, Brown, SIPC, and Hopkins. Specifically, MKI failed to set forth any facts showing that BCC and SIPC entered into an agreement to conspire against MKI, or any facts surrounding the acts BCC and SIPC took in furtherance of such agreement. MKI alleged facts showing that Brown and Hopkins advised MKI that the BCC/SIPC Agreement provided BCC exclusive rights to all SBBA produced by SIPC. However, MKI's allegations indicate that Brown, acting on behalf of BCC, believed the BCC/SIPC Agreement provided BCC exclusive rights to the SBBA, and that Brown immediately notified MKI when Hopkins advised otherwise. Such allegations demonstrate that there was no agreement between BCC and SIPC to commit an unlawful conspiracy. The allegations, instead, appear to indicate that Brown and Hopkins intended to interpret the BCC/SIPC Agreement to provide BCC exclusive rights to the SBBA when negotiations took place in January 2017. However, Hopkins, acting on behalf of SIPC, later decided that the BCC/SIPC Agreement did not provide BCC exclusive rights to the SBBA. Accordingly, we find that MKI's allegations fail to allege facts establishing an agreement to conspire against MKI, and therefore, fail to state a claim for civil conspiracy against BCC, Brown, SIPC, and Hopkins. Thus, the circuit court did not err by dismissing counterclaim count VI and third-party complaint counts VII, VIII, and IX.

¶ 63    5. Promissory Estoppel

¶ 64    We next consider MKI's argument that it pled sufficient facts to state a claim for promissory estoppel against SIPC (third-party complaint count XI). Promissory estoppel is "an equitable device invoked to prevent a person from being injured by a change in position made in reasonable reliance on another's conduct." *Kulins v. Malco, a Microdot Co.*, 121 Ill. App. 3d 520, 527 (1984). "To establish a claim based upon promissory estoppel, a plaintiff must allege and prove that '(1) defendants made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment.' " *Ross v. May Co.*, 377 Ill. App. 3d 387, 393 (2007) (quoting *Quake Construction, Inc. v. American Airlines, Inc.*, 141 Ill. 2d 281, 310 (1990)). "A plaintiff's reliance must be reasonable and justifiable." *Id.* (citing *Quake Construction, Inc.*, 141 Ill. 2d at 310).

¶ 65    Our supreme court discussed *Quake* in *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 233 Ill. 2d 46, 52-53 (2009). Specifically, our supreme court noted the following:

> "In *Quake* this court affirmed the appellate court judgment allowing plaintiff's promissory estoppel claim to go forward, recognizing that promissory estoppel is an available theory in the absence of a contract. *Quake*, 141 Ill. 2d at 310. Likewise, in *Doyle v. Holy Cross Hospital*, 186 Ill. 2d 104 (1999), although two justices found that promissory estoppel was not available under the facts of that case, those justices considered it important to discuss the doctrine as it stood in Illinois at that time. *Doyle*, 186 Ill. 2d at 118-23 (Freeman, J., concurring in part and dissenting in part, joined by McMorrow, J.). The partial concurrence cited *Quake* for the four elements a plaintiff must prove to establish a promissory estoppel claim in Illinois. Those justices referred both to the traditional uses of promissory estoppel—gratuitous promises, charitable subscriptions and certain intrafamily promises— and *to the expanded use of the doctrine to apply to otherwise defective contracts and preliminary negotiations*. Neither *Quake* nor the partial concurrence in *Doyle* reflects any doubt that promissory estoppel is recognized in Illinois." (Emphasis added.) *Id.*

¶ 66    Here, in count XI of its third-party complaint, MKI alleged that Hopkins, acting within the course and scope of his authority on behalf of SIPC, "specifically promised MKI that they would

only sell SBBA to BCC as an assurance to MKI regarding contracting with BCC." Taking this allegation as true, it was sufficient to show that SIPC made MKI an unambiguous promise. MKI alleged that "SIPC knew, or it was reasonably foreseeable, that MKI would rely upon the promise that all sales of SBBA would go through BCC while negotiating a contract between MKI and BCC." MKI further alleged that it "reasonably believed that SIPC would only sell SBBA to BCC based upon their prior course of conduct regarding the sale of SBBA," and that "MKI engaged in negotiations with BCC based upon the specific representation of SIPC regarding the sale of SBBA." These allegations, taken as true, demonstrated that MKI's reliance on the promise was reasonably foreseeable or expected. MKI alleged that it entered into a contract with BCC regarding the purchase of SBBA from BCC in exchange for MKI making "certain payments to BCC" and that "MKI only entered into the contract with BCC and paid the monies to BCC based upon the specific promise by SIPC that all SBBA sales would go through BCC." Taking these allegations as true, they were sufficient to show that MKI relied on SIPC's promise. Lastly, MKI alleged that it "suffered damages as a result, including but not limited to MKI's payment of Freedom's debt to BCC, [MKI] hiring [a former Freedom employee], MKI's lost profits based on the Agreement, and MKI's lost business expectancy." This allegation sufficiently demonstrated that MKI suffered damages as a result of its reliance on SIPC's promise. Thus, taking MKI's allegations as true, we conclude that MKI alleged sufficient facts to state a promissory estoppel claim against SIPC. Accordingly, we hold that the circuit court erred by dismissing count XI of the third-party complaint.

¶ 67    In sum, MKI failed to set forth sufficient facts to state claims for fraudulent misrepresentation, tortious interference with a contract, tortious interference with a business expectancy, and civil conspiracy. Accordingly, we hold that the circuit court properly dismissed

23

those claims pursuant to section 2-615 of the Code. However, MKI set forth sufficient facts to state a claim for promissory estoppel. Thus, we hold that the court erred by dismissing third-party complaint count XI pursuant to section 2-615 of the Code, and we remand for further proceedings as to this count.

¶ 68          C. Denial of MKI's Requests to Continue and for Discovery

¶ 69    MKI argues that the circuit court erred by denying its motion to continue the trial to permit MKI's new counsel to conduct discovery. We disagree.

¶ 70    Section 2-1007 of the Code (735 ILCS 5/2-1007 (West 2020)) governs requests for continuances. "On good cause shown, in the discretion of the court and on just terms, additional time may be granted for the doing of any act or the taking of any step or proceeding prior to judgment." *Id.* In other words, a party has no absolute right to a continuance. *In re Marriage of Ward*, 282 Ill. App. 3d 423, 430 (1996). In addition, Illinois Supreme Court Rule 231(f) (eff. Jan. 1, 1970) provides that, "No motion for continuance of a cause made after the cause has been reached for trial shall be heard, unless a sufficient excuse is shown for the delay." Thus, a party requesting a continuance must provide the court with especially grave reasons for a continuance once the case has reached the trial stage given the potential inconvenience to the witnesses, the parties, and the court. *K&K Iron Works, Inc. v. Marc Realty, LLC*, 2014 IL App (1st) 133688, ¶ 23; *In re Marriage of Ward*, 282 Ill. App. 3d at 430-31. Moreover, a court possesses inherent authority to control its own docket and the proceedings before it. *People v. Swamynathan*, 236 Ill. 2d 103, 117 (2010).

¶ 71    The decision to grant or deny a motion for a continuance is within the sound discretion of the trial court and will not be disturbed on appeal "unless it has resulted in a palpable injustice or constitutes a manifest abuse of discretion." *Wine v. Bauerfreund*, 155 Ill. App. 3d 19, 22 (1987).

24

A circuit court's ruling is considered an abuse of discretion when it is arbitrary, fanciful, or unreasonable, or when no reasonable person would take the same view. *Roach v. Union Pacific R.R.*, 2014 IL App (1st) 132015, ¶ 20.

¶ 72    Here, the circuit court did not abuse its discretion by denying MKI's motion to continue the trial to allow MKI's new counsel to conduct additional discovery. It appears from the record that the court denied the motion to continue following a hearing on November 24, 2021. However, the record on appeal does not contain a transcript of the November 24, 2021, proceeding or an acceptable substitute. "[A]n appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). "Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Id.* at 392. Because there is no transcript of the hearing on MKI's motion to continue trial, "there is no basis for holding that the trial court abused [its] discretion in denying the motion." *Id.*

¶ 73    Moreover, the record reveals that the circuit court allowed MKI to amend its pleadings on multiple occasions over the course of four years. MKI also changed attorneys multiple times before MKI's final attorney filed an entry of appearance on November 5, 2021. New counsel for MKI did not file a motion to continue the trial until November 17, 2021, less than a month before the scheduled trial. BCC objected to MKI's motion to continue trial. It also appears that the parties exchanged extensive discovery in the years leading up to trial. Under these circumstances, we cannot say that the court abused its discretion by denying MKI's motion to continue to allow MKI's new counsel to conduct additional discovery.

25

¶ 74                    D. BCC's Breach of Contract Claims

¶ 75    MKI makes various arguments in support of its contention that the circuit court erred by entering judgment in favor of BCC and against MKI on BCC's breach of contract claims. We agree with MKI, in part.

¶ 76    The standard of review following a bench trial is whether the trial court's judgment is against the manifest weight of the evidence. *Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd. USA*, 384 Ill. App. 3d 849, 859 (2008). A judgment is against the manifest weight of the evidence when the opposite conclusion is apparent or when the findings are unreasonable, arbitrary, or not based on the evidence. *Id.* "We will not disturb a trial court's judgment as long as there is evidence to support the judgment." *Northwestern Memorial Hospital v. Sharif*, 2014 IL App (1st) 133008, ¶ 25. Accordingly, we consider whether the circuit court's judgment in favor of BCC on BCC's breach of contract claims and against MKI was against the manifest weight of the evidence.

¶ 77    "To establish a breach of contract claim, a plaintiff must prove the existence of a valid and enforceable contract, performance by the plaintiff, breach of the contract by the defendant, and damages or injury to the plaintiff resulting from the breach." *Carlson v. Rehabilitation Institute of Chicago*, 2016 IL App (1st) 143853, ¶ 13. Here, MKI does not argue that BCC failed to prove the existence of a valid and enforceable contract, performance by BCC, and a breach of the contract by MKI. MKI also does not argue that BCC failed to prove damages in the first breach of contract claim (count I). Instead, MKI argues that the court erred by entering judgment in favor of BCC because (1) it proved its affirmative defenses and (2) BCC failed to prove damages in count II of the amended complaint.

26

¶ 78 As an initial matter, we reject MKI's assertion that it proved its affirmative defenses. As BCC correctly notes, each of MKI's affirmative defenses depended on MKI's assertion that the BCC/MKI Agreement provided MKI with the exclusive right to purchase all SBBA produced by SIPC. We agree with BCC, as well as the circuit court, that no such contractual right existed under the unambiguous language of the BCC/MKI Agreement. Instead, the BCC/MKI Agreement gave MKI the option to purchase as much SBBA as it desired from BCC each month. In exchange, BCC agreed not to sell SBBA to other companies for use in coal mines in North and South America. SIPC was not a party to the BCC/MKI Agreement and no provision of the BCC/MKI Agreement prohibited SIPC from selling SBBA directly to other parties. We also agree with BCC, as well as the circuit court, that the extension of the BCC/SIPC Agreement, which was in effect at the time MKI and BCC signed the BCC/MKI Agreement, clearly provided BCC the right of first refusal and did not provide BCC exclusive rights to all SBBA produced by SIPC. Specifically, the first extension of the BCC/SIPC Agreement provided for a second five-year period where BCC could match the highest bid for SBBA from any other source and continue to receive 50% of the selling price of SBBA. For these reasons, the circuit court's determination that MKI failed to prove its affirmative defenses was not against the manifest weight of the evidence.

¶ 79 We next consider MKI's assertion that BCC failed to prove damages in count II of the amended complaint. Specifically, we consider whether the circuit court's determination that BCC proved damages in count II of the amended complaint was against the manifest weight of the evidence. MKI argues that BCC failed to prove damages on the additional breach of contract claim in count II, which sought damages for MKI's failure to purchase the 1000 ton minimum of SBBA after September 2017, as required by the BCC/MKI Agreement. According to MKI, BCC failed

27

to prove that it would have been able to deliver the SBBA on which it would have made a profit. We agree.

¶ 80    The amount of recoverable damages is a question of fact for the trier of fact. *Koehler v. Packer Group, Inc.*, 2016 IL App (1st) 142767, ¶ 60. We determine whether the trial court's findings were against the manifest weight of the evidence. *Fieldcrest Builders, Inc. v. Antonucci*, 311 Ill. App. 3d 597, 607 (1999). A decision is considered against the manifest weight of the evidence only when an opposite conclusion is clearly apparent or when the findings are unreasonable, arbitrary, or not based on the evidence. *Eychaner v. Gross*, 202 Ill. 2d 228, 252 (2002). However, we review *de novo* the measure of damages on which the factfinder's computation is based because it is a question of law. *Koehler*, 2016 IL App (1st) 142767, ¶ 60. The plaintiff, as the party seeking to recover damages, has the burden of proving damages "resulting from the breach and establishing both the correct measurement of damages and the final computation of damages based on that measurement." *Ollivier v. Alden*, 262 Ill. App. 3d 190, 196 (1994).

¶ 81    "The basic theory of damages in a breach of contract action requires that a plaintiff 'establish an actual loss or measurable damages resulting from the breach in order to recover.' " *In re Illinois Bell Telephone Link-Up II*, 2013 IL App (1st) 113349, ¶ 19 (quoting *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 149 (2005)). "A plaintiff must prove damages to a reasonable degree of certainty, and evidence cannot be remote, speculative, or uncertain." *Dowd & Dowd, Ltd. v. Gleason*, 352 Ill. App. 3d 365, 383 (2004). "Damages are an essential element of a breach of contract action and a claimant's failure to prove damages entitles the defendant to judgment as a matter of law." *In re Illinois Bell Telephone Link-Up II*, 2013 IL App (1st) 113349, ¶ 19.

28

¶ 82    In the present case, count II of BCC's amended complaint sought damages for MKI's failure to purchase the 1000 ton minimum of SBBA after September 2017, as required by the BCC/MKI Agreement. While the evidence demonstrated that MKI did not purchase SBBA from BCC after September 2017 and that BCC submitted invoices to MKI for the minimum purchase amount pursuant to the contract, BCC failed to present evidence demonstrating that 1000 tons of SBBA would have been available for MKI to purchase each month after September 2017. Based upon the contract, the parties contemplated that there might be months in which BCC would be unable to provide 1000 tons of SBBA. The contract stated, "If [BCC] is unable to deliver 1,000 tons of SBBA in a given calendar month, [MKI] shall only be required to purchase the quantity available for delivery during such month." Testimony at trial further demonstrated that the amount of available SBBA for purchase depended on various factors, and that occasionally trucks were unable to pick up SBBA because it was unavailable. While the court found that there "was no evidence that BCC would have been unable to sell 1,000 tons per month," we note that the burden was on BCC to "prove damages to a reasonable degree of certainty, and evidence cannot be remote, speculative, or uncertain" (*Dowd & Dowd, Ltd.*, 352 Ill. App. 3d at 383). Because BCC failed to present evidence demonstrating that 1000 tons of SBBA would have been available to MKI each month after September 2017, BCC failed to prove entitlement to damages on count II of the amended complaint.[3] Thus, we conclude that the judgment entered by the court on count II of the amended complaint was against the manifest weight of the evidence.

---

[3]We note that MKI does not challenge the circuit court's award of damages on count I of the complaint, which was based on MKI's failure to pay BCC the August 2, 2017, and September 1, 2017, invoices. Accordingly, we affirm the portion of the court's order awarding BCC $19,834.05 based on MKI's failure to pay the invoices.

¶ 83                    E. MKI's Counterclaims

¶ 84    MKI argues that the circuit court erred by entering judgment in favor of BCC on MKI's counterclaims. Specifically, MKI argues that the court erred by entering judgment in favor of BCC on its counterclaims for breach of contract (counterclaim count I) and breach of the implied covenant of good faith and fair dealing (counterclaim count II). We disagree.

¶ 85    As MKI correctly notes, the standard of review following a bench trial is whether the trial court's judgment is against the manifest weight of the evidence. *Chicago's Pizza, Inc.*, 384 Ill. App. 3d at 859. A judgment is against the manifest weight of the evidence when the opposite conclusion is apparent or when the findings are unreasonable, arbitrary, or not based on the evidence. *Id.* "We will not disturb a trial court's judgment as long as there is evidence to support the judgment." *Northwestern Memorial Hospital*, 2014 IL App (1st) 133008, ¶ 25. We note, however, that MKI's specific arguments raise issues of contract construction, which this court reviews *de novo*. *Gallagher v. Lenart*, 226 Ill. 2d 208, 219 (2007). Accordingly, we consider the issues of contract construction *de novo* and the circuit court's judgment under the manifest weight of the evidence standard.

¶ 86    MKI first asserts that the circuit court erred by finding that the BCC/MKI Agreement was not incorporated into the BCC/SIPC Agreement. We disagree.

¶ 87    "[A]n instrument may incorporate all or part of another instrument by reference." *Provident Federal Savings & Loan Ass'n v. Realty Centre, Ltd.*, 97 Ill. 2d 187, 192-93 (1983). "Contracts which specifically incorporate other documents by reference are to be construed as a whole with those other documents." *Kirschenbaum v. Northwestern University*, 312 Ill. App. 3d 1017, 1029 (1999). However, the reference must show "an intention to incorporate the document and make it a part of the contract." *Arneson v. Board of Trustees*, 210 Ill. App. 3d 844, 849-50 (1991).

¶ 88    In the present case, the BCC/MKI Agreement provided as follows:

"However, in the event that BCC's contract with SIPC is extended for a period extending through March, 2022 under the same terms and conditions as the existing contract[,] B[C]C agrees to automatically extend this contract until midnight on March 31, 2022. In the event any changes are made by SIPC in a 2019—2022 extension agreement between SIPC and BCC, such changes shall be incorporated into the 2019 – 2022 extension agreement between BCC and MKI."

The BCC/MKI Agreement also provided: "This Agreement contains all of the representations and agreements between the parties hereto."

¶ 89    Based on our reading of the above contract provision, the BCC/MKI Agreement contemplated incorporating a future extension of a contract between BCC and SIPC, rather than a prior or current contract between BCC and SIPC. The BCC/MKI Agreement was signed in February 2017. The BCC/SIPC Agreement was originally signed in 2008—approximately nine years before the BCC/MKI Agreement. The BCC/SIPC Agreement was extended on March 31, 2014, and again on July 1, 2016—well before the signing of the BCC/MKI Agreement in February 2017. It is undisputed that MKI was not a party to any of the contracts between BCC and SIPC. MKI could have included a provision that specifically incorporated the BCC/SIPC Agreement in place at the time the BCC/MKI Agreement was signed but failed to do so. Under these circumstances, we conclude that the reference to a 2019 – 2022 extension agreement between SIPC and BCC did not show an intention to incorporate the BCC/SIPC Agreement in place at the time the BCC/MKI Agreement was signed. Thus, the circuit court did not err by finding that the BCC/SIPC Agreement was not incorporated into the BCC/MKI Agreement.

¶ 90    MKI next asserts that the circuit court erred in its application of the parol evidence rule. We disagree.

¶ 91    "Traditional contract interpretation principles in Illinois require that:

'[a]n agreement, when reduced to writing, must be presumed to speak the intention of the parties who signed it. It speaks for itself, and the intention with which it was executed must be determined from the language used. It is not to be changed by extrinsic evidence.' " *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 462 (1999) (quoting *Western Illinois Oil Co. v. Thompson*, 26 Ill. 2d 287, 291 (1962)).

This "is sometimes referred to as the 'four corners' rule." *Id.* In applying this rule, a court initially looks to the language of the written agreement. See *Rakowski v. Lucente*, 104 Ill. 2d 317, 323 (1984) (the court should determine both the meaning of a written agreement and the intent of the parties from the face of the document without assistance from extrinsic evidence). If the language in the written agreement is not ambiguous, the court must discern the parties' intention only from the language of the instrument, without resort to parol evidence. *Air Safety, Inc.*, 185 Ill. 2d at 462.

¶ 92    In the present case, the circuit court found that the BCC/MKI Agreement was not ambiguous. MKI does not appear to challenge this finding on appeal, where it admits in several places in its reply brief to this court that the BCC/MKI Agreement was not ambiguous. Instead, MKI maintains that the BCC/SIPC Agreement was ambiguous. Accordingly, ambiguity in the BCC/MKI Agreement cannot be the basis for MKI to utilize extrinsic evidence to show the parties' intentions based on the negotiations.

¶ 93    Moreover, as the circuit court correctly noted, the BCC/MKI Agreement contained an express integration clause. In *Air Safety, Inc.*, our supreme court noted the following regarding express integration clauses:

32

" 'When parties sign a memorandum expressing all the terms essential to a complete agreement they are to be protected against the doubtful veracity of the interested witnesses and the uncertain memory of disinterested witnesses concerning the terms of their agreement, and the only way in which they can be so protected is by holding each of them conclusively bound by the terms of the agreement as expressed in the writing.' " *Id.* at 464 (quoting *Armstrong Paint & Varnish Works v. Continental Can Co.*, 301 Ill. 102, 106 (1921)).

Our supreme court went on to note that "where parties formally include an integration clause in their contract, they are explicitly manifesting their intention to protect themselves against misinterpretations which might arise from extrinsic evidence." *Id.* Our supreme court reasoned as follows:

"During contract negotiations, a party may propose terms, conditions, and provisions which are ultimately rejected in order to reach a compromise with the other party. That other party, of course, may do the same. The integration clause makes clear that the negotiations leading to the written contract *are not* the agreement. Accordingly, considering extrinsic evidence of prior negotiations to create an 'extrinsic ambiguity' where *both* parties *explicitly* agree that such evidence will *not* be considered ignores the express intentions of the parties and renders integration clauses null." (Emphases in original.) *Id.* at 464-65.

¶ 94 Here, the BCC/MKI Agreement expressly provided that "[t]his Agreement contains all of the representations and agreements between the parties hereto." The inclusion of this clause indicated that the negotiations leading to the BCC/MKI Agreement were not part of the agreement. Accordingly, we conclude that the circuit court properly applied the parol evidence rule, where the

33

court refused to consider parol evidence in interpreting the BCC/MKI Agreement after finding that the BCC/MKI Agreement was not ambiguous and contained an integration clause. Thus, the court's judgment in favor of BCC on MKI's fifth amended counterclaims count I and II was not against the manifest weight of the evidence.

¶ 95                                    CONCLUSION

¶ 96    For the reasons stated, we affirm the circuit court's judgment in favor of BCC as to counts I and II of MKI's fifth amended counterclaim. We affirm the court's judgment in favor of BCC as to count I of its amended complaint, and we reverse the judgment in favor of BCC as to count II of its amended complaint. Additionally, we affirm the court's dismissal of the following claims filed by MKI: counts V and VI of MKI's fifth amended counterclaim, and counts I through X of MKI's third-party complaint. We reverse the court's dismissal of count XI of MKI's third-party complaint and remand this cause for further proceedings consistent with this order.


¶ 97    Affirmed in part and reversed in part; cause remanded.